### WESTERN UNION TELEGRAPH COMPANY *v.* WARD.

TELEGRAPH COMPANIES.—The law requires a telegraph company, when its agents in their proper office receive messages, to transmit the same with impartiality and good faith, and in the order of time in which they are received, and a failure to comply with this requisition makes the company liable to the person whose dispatch is neglected or postponed. Private dispatches must, however, give way to the transmission of intelligence of public and general interest, and to communications for and from officers of justice.

SAME.—Where the plaintiff went to the office of the *Western Union Telegraph Company* in *Indianapolis* with a message as follows, "Come by the night train," and inquired of the agent if the same could be sent immediately to *Lafayette, Indiana,* and was answered that it could be immediately, and paid the charges demanded of him by the agent, and the sending of the message was postponed till the next morning, when it was too late to be of any service, the plaintiff was entitled to recover the penalty of $100, under the statute, (1 G. & H. 611, sec. 1,) unless the message could not have been sent by reason of some derangement of the wires, or unless it was postponed in consequence of the transmission of intelligence of general and public interest, or communications for and from officers of justice.

APPEAL from the *Tippecanoe* Circuit Court.

RAY, CH. J.—This action was commenced against the appellant, under the first section of "An Act to regulate Electric Telegraph Companies," (1 G. & H. 611,) for an alleged violation of its provisions. The section directs that such companies shall, during the usual office hours, receive dispatches, and on payment or tender of the usual charge, according to the regulations of said companies,

shall transmit the same with impartiality and good faith, and in the order of time in which they are received, under penalty, in case of failure to transmit, or if postponed out of such order, of $100, to be recovered by the person whose dispatch is neglected or postponed. The section also makes provision that messages of a peculiar character shall have preference in the order of transmission. Issues were formed, and the cause submitted to a jury for trial. The finding of the jury was in favor of the appellee, under the instructions of the court. The evidence disclosed the following facts: Certain persons were arrested by military authority, in the city of *Lafayette*, and brought to *Indianapolis*, on the 1st day of *July*. The examination of the parties was postponed until ten o'clock, A. M., of the following day, and the appellee, who was their attorney, went at half-past seven o'clock, P. M., with his clients, to the office of the appellant in *Indianapolis*, and after inquiring of the agent in charge of the office whether the line was in order to *Lafayette*, and whether a message could be sent at once, and receiving an answer in the affirmative, he prepared a dispatch in these words: "Come on the night train without fail, to testify on behalf of," etc. This message was properly addressed, and the agent informed "that unless the dispatch could go at once, it would be of no use, as the men were wanted to come to *Indianapolis* by the night train." The agent replied "that the dispatch could be sent immediately, as there were no obstructions, and the lines were all clear." Thereupon the message was delivered, and was accepted upon payment of the charge for sending it. The evidence of the appellant was as follows: At the time the message was received, the book-keeper, whose duty it was to receive dispatches, collect payment for the same, and deliver to one of the operators, was in the office, and not more than one operator was present with him. That operator had left the service of the appellant, and could not be produced as a witness. The next morning, about eight o'clock, the acting

manager of the company discovered the dispatch with other messages on the files, and "saw that it ought to have been sent the evening before, to have enabled the parties to have come by the train as desired," and he then forwarded the message as soon as possible. It was also shown that sometimes messages were delayed, as the operator at the other end of the line was engaged on other lines when called. At that time, the dispatches for the associated press generally commenced coming at eight o'clock, and lasted sometimes a longer and sometimes a shorter time. At the proper time, the following instructions were asked by the appellant:

" 1. This is an action to recover a penalty of $100; and in order to entitle the plaintiff to recover, he must prove that he deposited with the defendant at *Indianapolis*, during the usual office hours, the message set forth in the complaint, for transmission to *Lafayette*, and paid or offered to pay therefor; and that the defendant did not, with impartiality, and in good faith, and in the order of time in which it was received, transmit the same to *Lafayette*.

" 2. Mere negligence in the transmission of the message, whereby it was delayed from evening until the next morning, unless such negligence was accompanied by bad faith, or unless the message was postponed out of its order, will not entitle the plaintiff to recover in this action, but in such case the company would be liable, in the proper action, for such damages as her negligence occasioned."

The instructions were refused by the court; and the following instructions were given to the jury, over the exceptions of the appellant: "1. This is an action to recover a penalty of $100 for an alleged failure to transmit the message, in the complaint specified, by the defendants. 2. The law requires of the defendant, where the agents of the telegraph company, in their proper office, receive messages, to transmit the same with impartiality and good faith, and in the order of time in which they are received; and a failure to comply with this requisition makes the

company liable to the person whose dispatch is neglected or postponed. Private dispatches must give way, however, to transmission of intelligence of general and public interest; to communications for and from officers of justice. If you shall believe, from the evidence, that the plaintiff, acting as the attorney of *Bixler* and *Iddings*, went to the office of the *Western Union Telegraph Company* at *Indianapolis*, with the message in the complaint specified, and inquired of the agent if the same could be sent immediately to *Lafayette*, and was informed that it could be immediately, and the plaintiff paid the charges demanded of him by such agent, and the sending of the message was postponed until the next morning, to an hour when it was too late for the message to be of any service, the plaintiff would be entitled to recover the penalty of $100, unless the company has shown that, after receiving the message, the same could not be sent by reason of some derangement of the wires, or that the dispatch was postponed in consequence of the transmission of intelligence of general and public interest, or communications for and from officers of justice."

It will be observed that the appellant sought, by the instructions asked, to place the question of her liability before the jury upon the determination of the issue, whether or not she had, with negligence and bad faith, postponed the transmission of the dispatch, or whether she had postponed such message out of its order. The instructions given to the jury presented the question, whether or not the message was transmitted the night following its delivery; and declared that if not transmitted then, and such failure was not excused by its lines being out of order, or privileged messages being received, the sending of it in the morning was no transmission, and the company were liable. We are of opinion that the view expressed by the court was correct. The message, upon its face, and as explained at the time of its delivery to the company, could have no force unless sent before

the night train left *Lafayette.* " Come by the night train," as it sounded along the wires the next morning, spoke not as a living voice, but as an echo of the past. Our postal facilities are ample for the transmission of such memories, and the law will not permit the telegraph to be employed as a rival.

The judgment is affirmed, with five per cent. damages.

*H. W. Chase* and *J. A. Wilstach,* for appellant.

*John A. Stein,* for appellee.