## THE WESTERN UNION TELEGRAPH COMPANY *v.* BUCHANAN.

TELEGRAPH COMPANY.—*Rules Limiting Liability.*—A person sending a message by telegraph, who knows of the existence of certain rules and regulations adopted by the telegraph company touching the transmission of messages, though he does not use the blank of the telegraph company upon which the rules and regulations are printed, is as much bound by the rules and regulations as if he had written the message sent on such a blank prepared by the company.

SAME.—*Gross Negligence.*—Telegraph companies may, within certain limits, establish rules and regulations, which, in cases not depending on any statute, may govern the manner of sending messages, repeated messages, and insured messages; but they cannot make such rules and regulations as will protect them from liability for damages resulting from their own gross negligence, or the gross negligence of their agents and servants.

SAME.—A telegraph company having in her employment an operator who does not know of the existence of a town which is the county seat of a neighboring county, and on the line of the telegraph, is guilty of gross negligence.

SAME.—*Penal Statute.*—Where a statute fixes the amount which a telegraph company shall pay as a penalty if she fails to comply with its requirements, the company cannot change the degree or measure of her statutory liability by the adoption of rules and regulations.

SAME.—Paying back the amount paid for sending a dispatch, and the acceptance of the same, unless it is agreed to be accepted in full of all that the party has a right to recover by virtue of the provisions of a penal statute, will not bar an action for the full penalty.

SAME.—*Damages.*—In an action to recover the penalty given by statute for a failure on the part of a telegraph company to transmit a message, it is not necessary that the plaintiff should prove any damages.

APPEAL from the Fountain Circuit Court.

DOWNEY, C. J.—This was an action brought by the appellee against the appellant before the mayor of Attica. In his complaint he alleges, "that on the 23d day of September, 1869, he placed in the hands of the defendant's agent, at Attica, Indiana, the following message, to wit:

'ATTICA, Sept. 23, 1869.

'R. B. F. PIERCE, Lebanon, Boone Co., Indiana:

'When is the White case set for trial? Answer.

JAMES BUCHANAN.'

"That said message was left at said office during the usual business hours, and was to be transmitted to said Lebanon, Boone county, Indiana, without delay, the said plaintiff paying in advance for the transmission of said message, the sum demanded by the agent of said company at the time he delivered said message; that the defendant, without cause, wrongfully wholly failed and refused to transmit said message at all, to the damage of the plaintiff one hundred dollars, which has never been paid, either in whole or in part, as shown per exhibit 'A,' herewith filed and made part here-

of; and plaintiff prays that he have judgment for the statutory penalty in such case made and provided, in the sum of one hundred dollars, and other proper relief.

The exhibit filed with the complaint is as follows:

"1869. WESTERN UNION TELEGRAPH CO. DR.

"To JAMES BUCHANAN:

"September 23.—To damages and penalty for not transmitting a message, $100."

The defendant answered, first, by a general denial; and, secondly, "that she has now, and has had ever since her organization as a company, certain proper rules and regulations governing and controlling her agents in their duties as employees for her in all transactions incidental to the transmission of messages, of which said rules and regulations plaintiff had full and complete knowledge at the time he pretended to deliver the message referred to in his complaint, a copy of which rules and regulations is filed with this answer; that plaintiff handed to the operator of said company the said message, at or near the Revere Hotel, in Attica, distant from her office one-fourth of a mile, requesting it forwarded; that plaintiff did not contract or pay for the services of said company to repeat the message, as by said company required, so as to avoid and secure against mistakes in the forwarding of his message. Said defendant avers, that said company did, in good faith and without delay, forward the said message, although the same was not delivered to the said company at her office at Attica, as required by law and the rules of her said office; that, by mistake, said message was sent to Lebanon, West, and did not reach Lebanon, Boone county, Indiana; that as soon as defendant ascertained that a mistake had occurred, she paid back and refunded to the plaintiff forty cents, being the amount paid by plaintiff at the time his said message was handed to defendant's operator on the street; that because no payment or contract was made by plaintiff to have said message repeated, said mistake occurred; wherefore," &c.

The regulations referred to in the answer are as follows: "All messages taken by this company are subject to the following terms: To guard against mistakes, the sender of a message should order it repeated; that is, telegraphed back to the original office. For repeating, one-half the regular rate is charged in addition. And it is agreed between the sender of the following message and this company that said company shall not be liable for mistakes or delays in the transmission or for non-delivery of any unrepeated message, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery or for non-delivery of any repeated message beyond fifty times the sum received for sending the same, unless specially insured; nor in any case for delays arising from unavoidable interruptions in the working of their lines, or for errors in cipher, or obscure messages. And this company is hereby made the agents of the sender, without liability, to forward any message over the lines of any other company, when necessary to reach its destination.

"Correctness in the transmission of messages, to any point in the lines of this company, can be insured by contract in writing, stating agreed amount of risk and payment of premium thereon, at the following rates in addition to the usual charges for repeating messages, to wit: one per cent. for any distance not exceeding one thousand miles, and two per cent. for any greater distance. No employee of the company is authorized to vary the foregoing. This company will not be liable for damages in any case where the claim is not presented in writing within sixty days after sending the message. WILLIAM ORTON, President.

"O. H. PALMER, Secretary.

"AARON SLAGER, General Superintendent,
"Chicaco, Illinois.

"Send the following message, subject to above terms, which are agreed to."

The cause was tried by the mayor, who rendered a judgment for the plaintiff for one hundred dollars.

The defendant appealed to the circuit court, where the cause was tried by the court, without a jury, with the same result. A motion for a new trial was made and overruled, the proper exception taken, and the evidence set out in the record.

As the evidence is short, we will state it. It is as follows:

*James Buchanan* testified: "I am the plaintiff. This message, set out in the complaint, was delivered to the operator, at Attica, during the usual business hours, on September 23d, 1869, and the charges demanded by the operator were paid at the time of such delivery. The message was written on the back of a business card, not on any of the company's blanks. The operator afterwards told me he did not know where Lebanon, Boone county, was, and had sent the message to West Lebanon, Warren county. I could get no answer to the same, and afterwards ascertained that it never had been sent to Lebanon, Boone county, Indiana, or delivered to Mr. Pierce. I was, at the time, aware of the rules and regulations pleaded by the defendant in her answer."

*R. B. F. Pierce* testified: "I was in Lebanon, Boone county, at the time the message should have been sent. I never received it. The defendant has a line running from Attica to Lebanon, Boone county, Indiana."

This was the plaintiff's evidence. The defendant gave in evidence the rules of the company, as above set out.

*J. M. Lee* testified: "I was the operator at Attica when the dispatch was delivered. It was not sent to Lebanon, Boone county, but I sent it to West Lebanon, Warren county. I did not know of the other place at the time. No request was made that it be repeated, and no fee for repeating the same was paid or demanded at the time. The message was not written on a company blank, but on the back of a business card. I gave back the money paid me for sending said message."

This was all the evidence given in the cause.

Vol. XXXV.—28

The statute which gives the penalty sued for in this case is in 1 G. & H., 611, sec. 1, and is as follows:

"Section 1. Be it enacted by the General Assembly of the State of Indiana, that every electric telegraph company, with a line of wires wholly or partly in this State, and engaged in telegraphing for the public, shall, during the usual office hours, receive dispatches, whether from other telegraphic lines or from individuals; and, on payment or tender of the usual charge, according to the regulations of such company, shall transmit the same with impartiality and good faith, and in the order of time in which they are received, under penalty, in case of failure to transmit, or if postponed out of such order, of one hundred dollars, to be recovered by the person whose dispatch is neglected or postponed: Provided, however, that arrangement may be made with the publishers of newspapers for the transmission of intelligence of general and public interest, out of its order, and that communications for and from officers of justice shall take precedence of all others."

The first position taken by the appellant is, that the company is not liable because the appellee did not pay for, and cause the message to be repeated, according to the regulations of the company. The company concedes its liability to the extent of the money paid by the appellee for sending the message, but insists that she is not liable beyond that amount; that the appellee, if he intended to hold the company for any greater amount than the sum paid, should have paid sixty, instead of forty cents, and had the message repeated, that is, returned to the office from which it was sent, and thus proved that it had been correctly sent. It is insisted that as the appellee, according to his own testimony, had notice of the regulation of the company, he was bound by it as much as if it had been incorporated into the contract.

It is clear that the appellee had notice of the existence of the regulations of the company. He testified to this fact in his own evidence. It would seem that the intention of the

company was that the party sending a message should write it on the same paper on which the regulation was printed, and under the same, and thereby expressly agree that the message was received and to be sent under, and in accordance with, such regulation. In this case, however, the message was not written under such regulation, but was written on a business card, and handed to the operator or agent of the company, when he was absent from the office. We are inclined to hold, however, that as the appellee knew of the existence of the regulations, and as the regulations themselves provided that no employee of the company was authorized to vary the terms of them, the appellee was as much bound by them as if he had written the message on the paper prepared by the company, and had thus assented to them.

The cases against telegraph companies will be found to range themselves under three different heads; first, such as are brought to recover damages for the breach of contract, express or implied, relating to the sending and delivery of messages; second, such as are brought to recover a penalty, or enforce a liability to pay damages imposed by statute; and third, such as are brought to subject the company or its agents to criminal responsibility for acts done or omitted, in violation of some statute.

This action falls under the second division, and is properly brought to recover the penalty given by the section of our statute which we have already set out in this opinion. It is not pretended that the appellee sustained damages to the amount mentioned in the *ad damnum* of the complaint, and for which judgment was rendered. In fact, it is not shown that the appellee suffered any damage from the omission or failure to send the dispatch.

The company in its regulations, which we have copied, provides for three rates of charges for sending dispatches, and fixes, or attempts to fix, as many different rules with reference to the measure of damages which may be recovered against it, in case of violation of the contract.

First, where the ordinary fee or charge is paid, and the message is not to be repeated, as in this case, and where, if the regulation is to govern, the company is only liable to refund to the party sending the message the sum paid by him for sending it.

Second, where the party sending the message contracts for having it repeated, and pays one-half in addition to the usual charge for that service; in which case the company is liable to pay damages not exceeding fifty times the amount paid by the party for sending the message.

Third, where the company, by contract in writing, insures the correct transmission of the message, the amount of the risk being agreed upon by the parties, and payment made according to the specified rates; in which case the company will be liable for the amount of the risk as fixed by the agreement.

If the regulation of the company in question was reasonable, and such as the company might make, and was therefore valid, we think it protected the company from liability to any greater extent than the amount paid.

The language of the regulation is, " And it is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or for non-delivery of any unrepeated message beyond the amount received for sending the same."

We think the question upon which the case depends is whether or not this was such a regulation as the company might lawfully make under the statute in question.

In *The Western Union Telegraph Company* v. *Ward*, 23 Ind. 377, this court held that the penalty might be recovered by a party whose dispatch was not sent as soon as it should have been; but no regulation of the company, such as is disclosed in this case, was brought to the attention or notice of the court.

In *Thurn* v. *The Alta Telegraph Company*, 15 Cal. 472, the action was founded upon a statute similar in most

respects to ours, the penalty being five hundred dollars, while ours is one hundred dollars. It was there held that the statute was a penal one, and should, therefore, be strictly construed. The case was decided in favor of the company because the plaintiff was not shown to be the party entitled to sue for the penalty.

In *MacAndrew* v. *The Electric Telegraph Company* 17 C. B. 3, the plaintiff sent his telegram, subject to a condition somewhat similar to that in the case at bar, by which the company charged half the usual price, in addition, for repeating, and stated that they would not be responsible for mistakes in the transmission of unrepeated messages from whatever cause they might arise. The message was not repeated. The regulation was in the form of a notice, and was brought home to the plaintiff. A mistake was made in sending the message, by which the plaintiff's ship was sent to one port instead of another, and he sustained a loss on the cargo. The English statute required the company, subject to such reasonable regulations as might be from time to time made or entered into by the company, to send and receive messages by all persons alike, without favor or preference. The regulation was held to be reasonable, so far as it required messages to be repeated, and provided that the company would not be responsible for mistakes in unrepeated messages from whatever cause they might arise. It was held to be reasonable, as the public had an opportunity to transmit unimportant messages for a small charge, and might secure accuracy in an important message at a moderate additional expense. The company was held not liable.

In *Camp* v. *The Western Union Telegraph Company*, 1 Met. Ky. 164, it was held that such a regulation was reasonable and just, and such as the company had a right to prescribe as the price of its responsibility; and a party acting under the notice, who did not have his message repeated, would be regarded as sending the same at his own risk, and the company would not be liable for damages resulting from a mistake not occasioned by negligence or the want of skill of

the agents of the company. The plaintiff having sent a message without having it repeated, it was held that the company was not liable to him for a mistake in its transmission, whereby he lost one hundred dollars.

In *Wann* v. *The Western Union Telegraph Company*, 37 Mo. 472, it was held that whether telegraph companies be regarded as common carriers or bailees, they may limit their liabilities by such a regulation, subject to the qualification that they will not be protected from the consequences of gross negligence. "Deny them this right, and they will be utterly unable to protect themselves against the hazards and risks which are incident to the business in which they are engaged. We see nothing unreasonable in their declaring that they will not be responsible for unrepeated messages. The system of telegraphing, however perfect it may be, is seriously affected by atmospheric causes, which are uncontrollable; and if a man wants to send a message of an important character, prudence and wisdom would seem to dictate that he should have it repeated, in order to be assured of its correct transmission. And as the repetition imposes additional labor, it is surely justice that an enhanced price should be paid. If the company undertakes to insure the accuracy of the message and assumes additional risk, it should be paid accordingly. The message sent by the plaintiff was one of importance; he could have demonstrated its perfect correctness by having it repeated at a trifling sum, and he was fully cognizant of the regulations of the company."

In *Ellis* v. *The American Telegraph Company*, 13 Allen, 226, the subject is fully and ably examined. The court, among other things, say: "There can be no doubt that, in the ordinary employments and occupations of life, men are bound to the use of due and reasonable care, and are liable for the consequences of carelessness or negligence in the conduct of their business to those sustaining loss or damage thereby. We can see no reason why this rule is not applicable to the business of transmitting messages by tele-

graph. But the rule does not operate so as to prevent parties from prescribing reasonable rules and regulations for the management of their business, or establishing special stipulations for the performance of services, which, if made known to those with whom they deal, and directly or by implication assented to by them, will operate to abridge their general liability at common law, and to protect them from being held responsible for unusual or peculiar hazards which are incident to particular kinds of business. Of course, a party cannot, in such way, protect himself against the consequences of his own fraud or gross negligence, or the fraud or gross negligence of his servants or agents. Nor can he escape all liability or responsibility in the performance of the service or duty which he undertakes. But he may, to a certain extent, in the mode above indicated, limit the extent of his liability, or graduate the amount of his compensation according to the risk which he assumes, as well as by the nature of the service which he renders. It is upon this ground that it is held that a common carrier, although by the rules of law he is an insurer of the property intrusted to him, may regulate the extent of his liability by a notice, brought home to his employer and assented to by him either directly or by implication. This principle is especially applicable to an employment such as is carried on by the defendants, which is, in its nature, a public one, and which the party undertaking it is bound to exercise for every one who may seek his services, however onerous or hazardous may be the particular duty or labor which he is called on to perform."

See, also, *The Western Union Telegraph Company* v. *Carew,* 15 Mich. 525, where the same doctrines are laid down.

In *Birney* v. *The New York and Washington Printing Telegraph Company,* 18 Md. 341, it was held that the company was not a common carrier, but a bailee. It was also held, that the company was liable for not sending a dispatch, though there existed such a regulation of the company, and though the message was not repeated.

In *Parks* v. *The Alta California Telegraph Company*, 13 Cal. 422, it is decided that telegraph companies are common carriers. The rules of law which govern the liabilities of telegraph companies are not new. They are old rules applied to new circumstances. Such companies hold themselves out to the public as engaged in a particular branch of business, in which the interests of the public are deeply concerned. They propose to do a certain service for a given price. There is no difference in the carrying of a message along a wire, and carrying goods or a package along a route, &c. In this case, the plaintiff was advised of the failure of parties who were indebted to him, and answered ordering an attachment. The return message was not sent, on account of an accident, until the next day, of which the plaintiff was not notified, and when the message reached its destination other attachments had been issued and had gained a priority. The company was held liable for the amount of the debt.

In *The New York and Washington Printing Telegraph Company* v. *Dryburg*, 35 Pa. St. 298, which was an action by the receiver of a message, it was held that the company was liable for the misfeasance of its agent in sending a different message from that directed to be sent. That though not insurers of the safe delivery of what is intrusted to them, their obligations, like those of common carriers, spring from the public nature of their employment and the contract under which the particular duty is assumed. That if they negligently or wilfully violate their duty to send the very message prescribed, they are responsible to the party to whom the erroneous message is addressed, in an action on the case. That even if the telegraph company be considered only as the agent of the sender of the message, they are liable to third persons, as wrongdoers for any misfeasance in the execution of the duties confided to them. They are not excused from liability to third persons for damages sustained by the negligent transmission of an erroneous message, by the fact that the sender did not pay for its being repeated back, in accordance with a rule of the company, whereby

they limited their responsibility to the correct transmission of messages that should be repeated.back; especially where the mistake consisted in transmitting a different message from the one ordered.

While these authorities establish the proposition that telegraph companies may, within certain limits, establish rules and regulations which, in cases not depending on any statute, may govern the manner of sending messages, and the prices to be paid for messages, repeated messages, and insured messages, they also establish the proposition that such companies cannot make such rules and regulations as will protect them from liability for damages resulting from their own gross negligence, or the gross negligence of their agents and servants.

In the case under consideration, we cannot regard the acts of the agent of the company as anything but the result of gross negligence, or incompetency. That the agent of a company should not know of the existence of a town which is the county seat of a neighboring county, the town being one of the stations on the line of the company, shows his utter unfitness for the position. The agent himself testifies, " I sent it " (the dispatch) " to West Lebanon, Warren county. I did not know of the other place at the time." We think the company was guilty of gross negligence in employing such an operator.

But this case may not turn on the question of gross negligence alone. The action is founded on a statute, a penal statute, and the object is the recovery of a penalty. We recognize the familiar rule that penal statutes are to be construed strictly. The statute fixes the amount which the company shall pay, as a penalty, if it fail to comply with its requirements; that is, it shall pay one hundred dollars to the party aggrieved. The regulation of the company attempts to fix another rule of liability; that is, that the company shall refund to the sender of the dispatch the amount paid by him for sending it, in case of an unrepeated message, and not exceeding fifty times the amount paid in

case of a repeated dispatch. We think the company cannot thus change the degree or measure of her statutory liability by the adoption of rules and regulations.

But it is claimed that, as the company refunded to the appellee the amount paid by him for sending the dispatch, and he accepted the same, he is thereby prevented from recovering anything more. We cannot agree to this. There is nothing to show that he accepted the return of the forty cents in full of all that he had a right to recover. Without such an agreement, we think the payment of that amount was not a discharge of the cause of action.

It was not necessary, to make out the plaintiff's right of action to recover the penalty, that he should have proved any damage.

The judgment is affirmed, with costs.

*J. E. McDonald, J. M. Butler,* and *E. M. McDonald,* for appellant.

*J. Buchanan,* for appellee.