[No. 984.]

## DUNCAN C. MACKAY, RESPONDENT, *v.* WESTERN UNION TELEGRAPH COMPANY, APPELLANT.

TELEGRAPH MESSAGES—DUTY OF COMPANY.—It is the duty of telegraph companies to transmit messages with reasonable diligence, and in the order of time in which they are received.

Idem—Damages for Delay.—Unless the importance of the message is shown either by its own terms or by explanation made to the person receiving it in behalf of the telegraph company, no damages are recoverable for failure or delay in transmission beyond the price paid for that purpose.

Idem.—Telegraph companies are liable to the extent of the actual damage sustained for delay or failure in transmitting a dispatch, the importance of which is manifest either by its own words or made so by explanation.

Appeal from the District Court of the First Judicial District, Storey County.

The facts sufficiently appear in the opinion.

*C. J. Hillyer,* for Appellant:

No damages beyond the price paid for sending the telegram were recoverable. The dispatch was in cipher, and absolutely unintelligible except to the person to whom it was sent. No explanation of its contents, or even of the nature of its subject-matter, was made to any of the defendant's agents. Admitting that telegraph companies are, in a certain sense, common carriers, and subject to the general rules, as to obligation and liability, governing such carriers, nevertheless there is a very broad distinction to be observed in the application of those rules as between them and carriers of articles of value. What the telegraph company carries is intangible, and has no intrinsic value. It can not, therefore, be an insurer in any such sense as other carriers. The liability of the latter, in case of negligence, may be determined by the value of the article lost, or the depreciation in value of the article damaged. Obviously, there can be no such liability for negligence in transmitting a telegram which has no value. In case of a breach of contract to send a telegram, the only *direct* damage is the loss of the price paid for its transmission. All other injury will fall within the class of what are legally termed consequential damages. In respect to these, the inquiry will be whether they are so related to the transaction as to be deemed a natural or sufficiently probable consequence of the negligence, or are too remote to be recoverable. (*Hayes v. Wells, Fargo & Co.,* 23 Cal. 185; Allen on Tel. 653; Sedg.

on Dam. 439, *et seq.; United States Tel. Co.* v. *Gildersleeve,* 29 Md. 232; *Bank* v. *Tel. Co.,* 30 Ohio St. 565; *Sanders* v. *Stuart,* L. R., 1 Com. P. Div. 326; *Lane* v. *Montreal Tel. Co.,* 7 U. C. Com. P. C. 23; *Durgan* v. *Western Union Tel. Co.,* 1 Am. Law Times (N. S.), 409; *Behm* v. *Western Union Tel. Co.,* 8 Biss. 131; *Hord* v. *Western Union Tel. Co.,* Ohio Rep.; *Schaeffel* v. *P. & A. Tel. Co.*)

*Lewis & Deal,* for Respondent:

I. It must be admitted that telegraph companies, like all companies and individuals, are liable for any damage resulting to another through their negligence or willful misconduct. They may make reasonable rules to govern their business and limit their liability, yet they can not make any rule to protect themselves from either willful misconduct or gross negligence. (Allen's Tel. Cas. 196, 212, 261, 471, 578.)

II. Telegraph companies can not, by any rule, limit their liability to the price of the dispatch, nor to any thing less than the actual damage. (Allen's Tel. Cas. 530.)

III. The measure of damages is the exact damage suffered by the sender of the message, that is, as in this case, the difference between the price that could have been obtained for the article ordered to be sold, and the price actually obtained. (Allen's Tel. Cas. 570, 574, 661, n.; *Parks* v. *Alta California Tel. Co.,* 13 Cal. 422; 2 Ohio Dig. 274; *Leonard* v. *Tel. Co.,* 41 N. Y. 544; *Rittenhouse* v. *Independent Tel. Co.,* Allen's Tel. Cas. 570; Scott & Jarnagin on Tel., secs. 165, 166, 242–245, 267.)

By the Court, Belknap, J.:

The defendant corporation received from the plaintiff, at the City of Virginia, in this state, for transmission by telegraph to San Francisco, a message, in words unintelligible by themselves, but which the broker to whom it was addressed could have understood as an order to sell two hundred and fifty shares of Mexican mining stock in his hands, belonging to plaintiff. The message was delivered to defendant at about 1 o'clock P. M. of the fourteenth day of

October, 1878, but through the negligent delay of defendant it was not received at its San Francisco office until 3:36 o'clock of that afternoon, and the plaintiff thereby lost the difference between the amount for which the stock could have been sold at the 2 o'clock P. M. informal session of the board of brokers, and that for which the stock was actually sold upon the receipt of the message by the broker. This difference the plaintiff claims he is entitled to receive as damages in this action, and under instructions supporting this theory the jury returned a verdict in favor of plaintiff for one thousand dollars.

It is the duty of proprietors of telegraph lines to transmit messages with reasonable diligence, and in the order of time in which they are received. Failure to do so creates a liability in favor of the person injured. Defendant's negligence in this respect is conceded for the purposes of this appeal, and the only question made in the case relates to the measure of damages. Defendant claims that the damages recovered were such as were not fairly within its contemplation, as the result of its delinquency, at the time it entered into the contract to transmit the message.

There appears to be no conflict in the decided cases, that in actions for breach of contract for transmission of telegraphic messages the measure of damages is the same as for breach of contract generally. In general, a party failing to perform his contract may be holden to make good the loss occasioned by his failure, but he can not be holden for remote, contingent, and uncertain consequences, or for speculative or possible results, though deducible from the failure. In the consideration of this subject the supreme judicial court of Massachusetts, in the case of *Squire* v. *Western Union Telegraph Company*, 98 Mass. 237, said: "A rule of damages which should embrace within its scope all the consequences which might be shown to have resulted from a failure or omission to perform a stipulated duty or service, would be a serious hindrance to the operations of commerce, and to the transaction of the common business of life. The effect would be to impose a liability wholly disproportionate to the nature of the act or service which a party has bound

himself to perform, and to the compensation paid and received therefor. The practical rule, founded on a wise policy, and at the same time consistent with good sense and sound equity, is, that a party can be held liable for breach of a contract only for such damages as are the natural or necessary and the immediate and direct results of the breach —such as might properly be deemed to have been in contemplation of the parties when the contract was entered into—and that all remote, speculative, and uncertain results, as well as possible profits and advantages, and other like consequences which might have arisen from the fulfillment of the contract, must be excluded as forming no just or legitimate basis on which to determine the extent of the injury actually caused by a breach."

The case of *Hadley* v. *Baxendale*, 9 Exch. 341, contains the following authoritative statement of this rule, which is frequently quoted and universally accepted: "When two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered, either arising naturally, *i. e.*, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract.

"For, had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would be very unjust to deprive them."

Let us consider the facts in this case under the rule as thus laid down: When the plaintiff handed the message to the manager of the defendant corporation no explanation of its subject-matter was made. Its contents were intentionally concealed by the employment of a cipher. It is true the manager testified that the plaintiff in delivering the message to him asked if it would be received in San Francisco in time for the two o'clock P. M. informal session of the board of brokers, to which inquiry the manager replied that he thought it would. The manager also admitted that a large proportion of the dispatches sent from Virginia City to San Francisco were in cipher, and that he generally supposed such dispatches related to stocks or mining business. From these facts defendant's manager might have inferred that the message related to mining stocks; but whether it contained an order to buy or sell, or revocation of a previous order, or some communication concerning the mines, or any of the many other matters incident to mining stock transactions, was in no wise suggested. Neither the message itself nor any communication made to defendant's manager disclosed the special purpose of the plaintiff in sending the message, and because of its total ignorance of the contents, defendant could not have contemplated, within the rule stated, as the probable result of failing to promptly transmit the message, that it would be answerable for the difference in the amount for which· the two hundred and fifty shares of Mexican stock were actually sold and that for which it could have been sold at the two o'clock board.

Since the loss sustained can not be "reasonably supposed to have been in contemplation of both parties at the time they made the contract, or the probable result of the breach of it," it follows that plaintiff is precluded from recovering the amount claimed   The only loss which followed as a natural consequence from defendant's breach of contract was the money paid by plaintiff for the transmission of the mes-

sage, and this is the limit of the damages he is entitled to recover under the facts presented.

Although the question herein considered has never before been adjudicated by this court, the decisions of the courts of other states uniformly sustain the principle that unless the importance of the message is shown either by its own terms or by explanation made to the person receiving it in behalf of the telegraph company, no damages are recoverable for failure or delay in transmission beyond the price paid for that purpose. (*Landsberger* v. *Magnetic Tel. Co.*, 32 Barb. 530; *Candee* v. *Western Union Tel. Co.*, 34 Wisc. 480; *Beaupre* v. *P. and A. Tel. Co.* 21 Minn. 155; *McColl* v. *Western Union Tel. Co.*, 12 J. & S. N. Y. 487; *Sanders et al.* v. *Stuart*, 17 Eng. (Moak's Notes), 286; *Baldwin* v. *United States Tel. Co.*, 45 N. Y. 744.)

On the other hand, telegraph companies are liable to the extent of the actual damage sustained for delay or failure in transmitting a dispatch, the importance of which is manifest either by its own words or made so by explanation. (*Leonard* v. *N. Y. Tel. Co.*, 41 N. Y. 544; *De Rutte* v. *N. Y. Tel. Co.*, 30 How. (N. Y.) 405; *Rittenhouse* v. *Independent Tel. Co.*, 44 N. Y. 265; *Bryant* v. *Am. Tel. Co.*, 1 Daly, 590; *Sprague* v. *W. U. Tel. Co.*, 6 Daly, 201; *U. S. Tel. Co.* v. *Wenger*, 55 Pa. St. 268; *Tel. Co.* v. *Dryberg*, 35 Id. 300; *True* v. *International Tel. Co.*, 60 Me. 27; *Squire* v. *W. U. Tel. Co.*, 98 Mass. 233; *Parks* v. *Alta Tel. Co.*, 13 Cal. 424; *W. U. Tel. Co.* v. *Tyler*, 74 Ill. 168; 60 Ill. 421.)

Judgment reversed.