# Daughtery *v.* American Union Telegraph Company.

*Assumpsit against Telegraph Company to recover Damages for Non-Delivery of Message.*

1. *Breach of executory contract ; measure of damages.*—It is a rule of universal acceptance, that damages for the breach of an executory contract, to be recoverable, must be the natural and proximate consequence of the breach, not speculative or contingent ; that is, such damages as result in the usual course of things, as distinguished from accidental or collateral injury, or from such as would spring out of special circumstances, not usually attendant upon such transactions.

2. *Same ; extent of recovery can not be tested on demurrer.*—If, in such an action, any thing is recoverable, demurrer is not the way to test the extent of recovery ; but this should be done by objections to testimony and by charges.

3. *Liability of telegraph company for failure to deliver message ; measure of damages.*—The proposition is fully sustained by the authorities, that, where a telegraph-company receives, and, for a valuable consideration, agrees to transmit and deliver a message, expressed in plain language, directing the sale of cotton owned by the sender, and, without lawful excuse, fails to transmit and deliver the message in due time, the sender can recover the actual damages sustained by the fall in the market-price of the cotton between the time it would have been sold, if the message had not been delayed, and the time it was actually sold ; qualified, however, by the further proposition, that so soon as the sender discovers that his message has not been forwarded, it becomes his duty, within a reasonable time, to take the requisite steps to prevent further loss, which is usually done by repeating the order or direction to sell.

4. *Same; measure of damages when message in cipher.*—The liability of the telegraph company not depending on the knowledge which the operator may have of the contents of the message, the same rule as to the measure of damages applies even where the message is in cipher, and is not explained to the operator, who is ignorant of its purport and object.

5. *Measure of damages; Hadley v. Baxendale, criticised and limited.* The rule for the assessment of damages recoverable on a breach of contract, laid down in *Hadley v. Baxendale,* 9 Exch. 341, that they are "such as may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract, as the probable result of the breach of it," criticised and limited.

6. *Suit on contract by telegraph company for delivery of message.*—If an agent, in delivering and paying for the message to be forwarded, discloses the name of his principal, for whom he is acting, the contract for the transmission and delivery of the message being oral, this makes it the principal's contract, upon which he can, and should sue in his own name.

APPEAL from Lee Circuit Court.
Tried before Hon. H. D. CLAYTON.
The facts are stated in the opinion.

[Daughtery v. American Union Telegraph Co.]

J. M. Chilton, for appellant. (No brief came to the hands of the reporter.)

W. H. Barnes & Son and John S. Bigby, *contra.*—(1) Among other grounds, the telegraph company insists that the appellant can not maintain his action, because the damages claimed were not within the contemplation of the company at the time the contract was made. The message was purely a cipher message, and the company was not informed of its meaning or value, at the time of its delivery for transmission. The correct rule for the measure of damages is laid down in *Hadley v. Baxendale,* 9 Exch. 353, and is as follows: Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach, should be such as may fairly and reasonably be considered, as either arising naturally, i. e., according to the natural course of things, from the breach itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. This rule has been approved in the following cases: *Griffin v. Colver,* 16 N. Y. 491; *Baldwin v. U. S. Tel. Co.,* 45 N. Y. 744, and cases cited ; *Landsberger v. Tel. Co.,* 32 Barb. 530 ; *British Columbia S. M. Co. v. Nettleship,* 3 L. R. C. P. 499 ; *Horne v. Midland R. Co.,* 7 *Ib.* 590 ; 8 *Ib.* 131; *Cory v. Thames Iron Co.,* 3 L. R. Q. B. 190 ; *Hobbs v. London R. Co.,* 10 *Ib.* 111 ; 11 Eng. R. 181 ; *Elbinger v. Armstrong,* 11 *Ib.* 127 ; *Simpson v. London & N. W. R. Co.,* 16 *Ib.* 330 ; *Candee v. W. U. Tel.Co.,* 34 Wisc. 471 ; 17 Am. Rep. 452 ; *Sanders v. Stuart,* 17 Eng. R. 268 ; *Bryant v. Am. Tel. Co.,* 1 Daly, 575 ; *Leonard v. Tel. Co.,* 41 N. Y. 544. See also Abbott's New Cases, pp. 155–165 ; *Shields v. Washington Tel. Co.,* (La.1852), Allen Tel. Cas. 5 ; *Lane v. Montreal Tel. Co* , (Canada, 1857), *Ib.* 61 ; *Kinghorne v. Montreal Tel. Co.,* (Canada, 1859), *Ib.* 98 ; *Dorgan v. Tel. Co.,* (U. S. Cir. Ct. Southern Dist. Ala., April, 1874), 1 Am. L. T. R. N. S., Sept. 1874, p. 407 ; *Beaupre v. P. & A. Tel. Co.,* 21 Minn. 155 ; *U. S. Tel. Co. v. Gildersleeve,* 29 Md. 232 ; *Behrn v. W. U. Tel. Co.,* U. S. Cir. Ct., Jan'y, 1878 ; *Hord v. W. U. Tel. Co.,* (Sup. Ct. Cincinnati, 1878), Cin. Law Bulletin, Feb'y, 1878, p. 147 ; *Barnesville Bank v. W. U. Tel. Co.,* 30 Ohio St., p. 555 ; *Mackay v. W. Tel. Co.,* 16 Nev. 222 ; *W. U. Tel. Co. v. Martin,* 9 Bradwell, 587 ; Wood's Mayne on Dam. (1st Am. Ed.) p. 40, § 35. (2) The rule which requires damages recoverable to have been within the actual contemplation of the parties, is to be strictly construed in favor of telegraph companies, which are not voluntary contracting parties.—*Breese v. U. S. Tel.*

*Co.*, 45 Barb. 274; s. c. 48. N. Y. 132; *Belger v. Dinsmore*, 51 *Ib.* 166; *Horne v. Midland R. Co.*, 7 L. R. C. P. 590; s. c. 8 L. R. C. P. 135; *Smeed v. Foord*, 1 Ell. & Ell. 616; *British C. Saw Mill Co. v. Nettleship*, 3 L. R. C. P. 505.

STONE, J.—In suits such as this, to authorize recovery, the damages must be the natural and proximate consequence of the breach. Speculative or contingent damages can not be recovered. What is meant by the phrase, "natural consequence," is the damage which would result in the usual course of things, as distinguished from accidental or collateral injury, or such as would spring out of special circumstances, not usually attendant upon such transactions. The foregoing rules are of universal acceptance, and are invoked in almost, or quite every judicial contention, growing out of breaches of executory contracts.

The present suit is an action of assumpsit, brought by the appellant against the appellee, telegraph company, to recover damages for the non-delivery of a message, which the latter received, and, for a consideration, promised to deliver. The message was in cipher, and did not disclose to the uninitiated what its meaning and purpose were. Though expressed in letters of the English alphabet, and susceptible of being rendered into sound, they were but symbols, not understood, and not intended to be understood, save by those instructed in the secret art. They were not explained to the telegraphic operator, and he was ignorant of the purport and object of the message. It was addressed to a well known firm of cotton brokers in the city of New York, and the complaint alleges that if it had been transmitted and delivered to that firm according to the usual course of telegraphy, they would have understood it, and acted on it; that its true import was a direction to the brokers to sell three hundred bales of cotton previously purchased by plaintiff in that city, one hundred bales to be delivered in that month—January, 1881—and the remaining two hundred bales to be delivered in the month of May following; that if the message had been transmitted and delivered in due time, the brokers would have made the sale, and thus realized to him, the sender, one hundred dollars profit in the purchase and resale; that in consequence of the non-delivery of the message, the cotton was not sold, but remained on hand; and that when, several days afterwards, it became known and necessary to send another direction to sell, in consequence of the non-delivery of the first, the price of cotton had materially declined; and, on a sale then made, plaintiff sustained a loss of a thousand dollars. Plaintiff claims this sum, as damages suffered by the defendant's breach of contract. Several grounds of demurrer

were interposed by the defendant, and the circuit court sustained them all.] The fourth ground is in the following language: "The complaint shows that the dispatch sent was a cipher dispatch, unintelligible to the operator—agent—that sent the same, and it fails to show that the said agent was informed as to the importance and value of the said dispatch, or that it was of any importance."

The ruling of the circuit court on this ground, or cause of demurrer, is sought to be maintained by the following argument: That in suits for breach of contract, only such damages can be recovered, as were within the contemplation of the parties when the contract was entered into; that the telegram attempted to be sent in this case, being in cipher and its contents and purpose unknown to the company's operator, it is impossible the damages claimed could have been within the contemplation of the telegraph company, or its operator. On this ground it is claimed that only the price paid for the telegram can be recovered.] This concession itself shows that this ground of demurrer should not have been sustained. If any thing was recoverable, demurrer is not the way to test the extent of recovery. That is done by objections to testimony, and by charges. But, aside from the right to recover the cost of the message, whenever there is an unwarranted breach of contract, some damages may be recovered—nominal damages, at least. The argument here urged has a wider and deeper scope, and denies the right of the plaintiff to recover the loss sustained in the delayed sale of his cotton.

The authorities fully sustain the proposition, that if the telegram had been expressed in plain language, directing the sale of plaintiff's cotton, and the telegraph company, without lawful excuse, failed to transmit and deliver it in due time, then the plaintiff can recover the actual damage he sustained by the fall in the market price of cotton, between the time it would have been sold if the message had not been delayed, and the time it was actually sold. Of course, this is qualified by another principle, namely: That as soon as the plaintiff discovered his message had not been forwarded, it became his duty, within a reasonable time, to take the requisite steps to prevent further loss. This is usually done by repeating the order or direction to sell. The following authorities support the proposition asserted above: *Squire v. W. U. Tel. Co.*, 98 Mass. 232; *Leonard v. N. Y., A. & B. Magn. Tel. Co.*, 41 N. Y. 544; *True v. Int. Tel. Co.*, 60 Me. 9; *N. Y. & W. Pr. Tel. Co. v. Dryburg*, 35 Penn. St. 298; *U. S. Tel. Co. v. Wenger*, 55 Penn. St. 262; *W. & N. O. Tel. Co. v. Hobson*, 15 Gratt. 122; *W. U. Tel. Co. v. Ward*, 23 Ind. 377; *Tyler v. W. U. Tel. Co.*, 60 Ill. 421; *Manville v. W. U. Tel. Co.*, 37 Iowa, 214; *Turner v. Hawk-*

*eye Tel. Co.*, 41 Iowa, 458; *Elwood v. W. U. Tel. Co.*, 45 N. Y. 549; *W. U. Tel. Co. v. Blanchard*, 68 Ga. 299; s. o. 45 Am. Rep. 480. In many of these cases the messages were not self-explaining.

In support of the main ground of demurrer under consideration, appellee relies on the following authorities: *Landsberger v. Magn. Tel. Co.*, 32 Barb. 530; *Baldwin v. U. S. Tel. Co.*, 45 N. Y. 744; *U. S. Tel. Co. v. Gildersleeve*, 29 Md. 232; *Bank v. W. U. Tel. Co.*, 30 Ohio St. 555; *Candee v. W. U. Tel. Co.*, 34 Wis. 471; *Beaupre v. Pac. & Atl. Tel. Co.*, 21 Minn. 155; *Mackay v. W. U. Tel. Co.*, 16 Nev. 222; *Hobbs v. L. & S. W. Ry. Co.*, 10 L. R. (Q. B.) 111. The following cases, cited from Allen's Telegraph Cases (the reports are not in our library), are also relied on: *Shields v. Wash. Tel. Co.*, p. 5; *Lane v. Mont. Tel. Co.* (Canada), p. 61; *Stevenson v. Mont. Tel. Co.*, p. 71; *Kinghorne v. Mont. Tel. Co.*, p. 98. Some of these rulings were made on cipher telegrams; others are messages which, un-explained, did not disclose the extent or full import of any transaction had in contemplation by the parties; and in all, substantial damages were refused, because neither the messages, nor other information given, made known to the operator what was contemplated. Hence, it was ruled that plaintiffs could not recover of the telegraph company what, not understanding, it could not have contemplated as the effect of a miscarriage or other failure. These authorities sustain the argument they are cited to support. Several of the cases, however, rest, not on cipher telegrams, but on messages which, by their brevity, or for some other reason, failed to give full information of their import. They are not reconcilable with several of the cases above cited by us, in which plaintiffs recovered.

The question we are considering, in reference to cipher or obscure telegrams, is of comparatively modern presentation. The oldest adjudication, asserting the doctrine contended for, is little more than a dozen years old. The telegraph itself is a new invention, and, of course, special rules adapted to it must be modern. Possibly the oldest case, which withheld damages because the dispatch was unintelligible to the operator, was a *nisi prius* ruling in Louisiana, in the case of *Shields v. Washington & N. O. Tel. Co.*, reported in 1 Livingston's Law Mag. 69; 4 Amer. Law Jour. (N. S.) 311. We have no access to the full report of this case, and can not tell by what authorities it was supported. *Landsberger's case*, from 32 Barber, was not in cipher, but was obscure. Relief was denied on the ground that the damages claimed were too remote. That case was decided in 1860. *Baldwin's case*, 45 N. York, 744, *Gildersleeve's case*, 29 Md. 232, *Lane's case*, Allen Tel. Cas. 61, *Stevenson's case*, *Ib.* 71, *Kinghorne's case*, *Ib.* 98, and *Beaupre's case*,

21 Min. 155, were all similar cases of obscurity in the message—not self-explaining. *Candee's case*, 34 Wis. 471, and *Mackay's case*, 16 Nev. 222, are all cipher dispatches. We can perceive no reason, however, for a different rule, as applicable to the two classes. If it be essential in case of a cipher telegram that its contents and object be explained, what reason can be urged for a different rule, when the dispatch, though legible, is yet so briefly and obscurely expressed, that no one can understand its import or magnitude, save the sender and receiver? If the information be material in the one case, it must be in the other.

As we have seen, the argument on which the decisions under discussion have been rested, is that they are too remote, not being within the contemplation of the parties. *Hadley v. Baxendale*, 9 Exch. 341, is relied on as declaring the underlying principle, which supports all these rulings. This case was decided in 1854 by a very able bench, after great deliberation, and is everywhere regarded as a leading case. Plaintiffs were proprietors of a mill in Gloucester, which was propelled by steam, and which was engaged in grinding and supplying meal, flour, etc., to customers. The shaft of the engine got broken, and it became necessary that the broken shaft be sent to an engineer or foundery-man at Greenwich, to serve as a model for casting or manufacturing another that would fit into the machinery. The broken shaft could be delivered at Greenwich on the second day after its receipt by the carrier. It was delivered to the defendants, who were common carriers engaged in that business between these points, and who had told plaintiffs it would be delivered at Greenwich on the second day after its delivery to them, if delivered at a given hour. The carriers were informed the mill was stopped, but were not informed of the special purpose for which the broken shaft was desired to be forwarded. They were not told the mill would remain idle until the new shaft would be returned, or that the new shaft could not be manufactured at Greenwich until the broken one arrived to serve as a model. There was delay beyond the two days in delivering the broken shaft at Greenwich, and a corresponding delay in re-starting the mill. No explanation of the delay was offered by the carriers. The suit was brought to recover damages for the lost profits of the mill, caused by the delay in delivering the broken shaft. The judgment of the court was pronounced by Baron Alderson. He said : " We think the proper rule in such a case as this is—where two parties have made a contract which one of them has broken,—the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.*, according to the

[Daughtery v. American Union Telegraph Co.]

usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made, were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances, so known and communicated. But on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract."

The first thought which suggests itself in a perusal of the foregoing language is, that it declares two rules for the assessment of damages for a breach of contract. First, where there are no special circumstances in the case, to distinguish it from the great mass of contracts of the same kind. In all such cases, the damages recoverable are such as naturally and would generally result from such breach, "according to the usual course of things." The shipment in this case was of a broken casting, usually valuable as old iron, to be recast into something else. It was not the case of a commodity, whose form, appearance and condition indicated nothing. Its natural appearance—that which would strike the general beholder—was, that it was useful, and only useful as old iron. Thus considered, its only appreciable value was its marketable quality; and the damage the shipper would suffer from delay in its delivery would, according to the usual course of things, be the delay in realizing its proceeds, and a fall in the market price, if the market should give way between the time it should have been delivered according to contract, and the time it was actually delivered. This is a rule of very general application in commercial dealings; a rule for the assessment of damages, in very many breaches of contract. Of course, it has exceptions. If the injury, or alleged lost profits be speculative, or so contingent that no reasonably certain rule can be declared for their measurement, then they can not be recovered on that account. *W. U. Tel. Co. v. Shotter*, (Ga.) 18 Cen. Law Jour. p. 230, (Mar. 21, 1884).

The second rule is, where there are special circumstances in the contract and its observance, which take it out of the usual course of things. Very many contracts have this character.

[Daughtery v. American Union Telegraph Co.]

The following are of this class:  *Ill. Cen. R. R. Co. v. Cobb*, 64 Ill. 128 ; *Booth v. Spuyten Duyvil R. M. Co.*, 60 N. Y. 487 ; *Randall v. Raper*, Ellis, B. & E. (Q. B.) 84 ; *Borradaile v. Brunton*. 8 Taunt. 535 ; *Passinger v. Thorburn*, 34 N. Y. 634 ; *Flick v. Wetherbee*, 20 Wisc. 412; *Smeed v Foord*, 1 E. & E. (Q. B.) 602 ; *Horne v. Midland Rw'y Co.*, 7 L. R. C. P. 583 ; s. c. 8 L. R. C. P. 131. / If these special circumstances be unknown—not communicated,—then they are not the natural result of the breach, for they did not result from it in the usual course of things.  If, however, they are communicated, they become an implied element of the contract, and parties are presumed to contract in reference to such special circumstances. Many illustrations of this rule might be given.  We will name but a few.  A carrier receives a package for transportation, having the appearance of being of but little value ; nothing about it to show it requires special care, or tender handling.  If he give it such attention as such packages usually require for their preservation, he will not be liable for the unknown, extra value it may possess.  An agent receives money to be deposited in bank, the object being to meet a paper maturing.  It is necessary, to avoid protest, that the money be in bank by a given hour, but the agent is not informed of it.  He fails to deliver the money in time, the paper goes to protest, and the credit of his principal is ruined.  The agent is not responsible for the loss, for he neither expressly nor impliedly contracted in reference to the duty, which alone could have prevented the injury.

What is here last said, is our understanding of the second rule declared in *Hadley v. Baxendale*. \The two rules are distinct, operate in different fields, and to treat them together necessarily leads to confusion.] In a very carefully prepared, learned note to the 7th edition of Sedgwick on Dam. vol. 1, 226, is this language :  " The rule in *Hadley v. Baxendale*, as we have seen in the text, is that the plaintiff is entitled to recover, (1) such damages as may fairly and substantially be considered as arising naturally, *i. e.*, according to the usual course of things, from the breach of the contract itself ; or (2) such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach."

The rule, or rather rules, declared in *Hadley v. Baxendale*, as interpreted in the note to Sedgwick, is not difficult to be understood.  It furnishes a standard of measurement in ordinary transactions—those marked by no special circumstances. The subject of the contract, or nature of the service contracted for, generally suggests the use for the one, or the purpose of the other.  The damage which would suggest itself as the nat-

ural result—according to the usual course of things—of a breach of such contract, would be the loss of the one, and the failure to enjoy the other, as they thus appeared. Suppose, however, there be special circumstances, which impart to the subject or service a value and importance their appearance does not indicate. This is outside of the usual course of things, and falls within Baron Alderson's second rule, which requires that the party sought to be charged shall have had notice of such special circumstances when he entered into the contract. A builder undertakes to erect and complete a dwelling by a named day. If no special circumstances are communicated to him when he enters into the contract, the measure of liability to which he will be exposed, if he fails to complete the house by the day named, is the value of the lost use the employer suffers by the delay, if such damages can be shown by any rule of proximate certainty. Suppose, however, the house has been agreed to be let for a term on a valuable lease, on agreement to let in the tenant on the named day, and the contractor has notice of such lease. If he fail to complete the house by the day named, and the landlord thereby lose his tenant and the profits of his lease, the contractor will be liable for such lost profits. This, by reason of the special circumstances communicated.

In *Hadley v. Baxendale*, it is said of damages that may be recovered on a breach of contract, that they " should be such as may fairly and reasonably be considered either arising naturally, *i. e.*, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of the parties, at the time they made the contract, as the probable result of the breach of it." What is meant by the words, *in contemplation of the parties?* It would seem that contracting parties—certainly honest ones—do not contemplate the breach of their contracts when they enter into them, and, hence, can not contemplate the consequences of a breach. Martin, one of the Barons of the Exchequer who participated in the decision in *Hadley v. Baxendale*, in the later case of *Wilson v. Newport Dock Co.*, 1 L. R. Court of Exch. 177, used this language: "I do not adopt the qualifications mentioned by Mr. Baron Alderson in the judgment in *Hadley v. Baxendale*, as applicable to every case. They may have been perfectly right there, but they are not of universal application.   .   .   .   .   And he [Baron Alderson] proceeds to say, 'such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract, as the probable result of the breach of it.' Now this may properly enough be taken into consideration in the case of carriers and their customers, but in

[Daughtery v. American Union Telegraph Co.]

the bulk of broken contracts it has no application whatever. Parties entering into contracts contemplate that they will be performed, and not broken; and in the infinite majority of instances, the damages to arise from the breach never enters into their contemplation at all." [So, in *Collins v. Stephens*, 58 Ala. 543, we said: "The measure of damages in a suit for a breach of contract    .    .    .    is the injury which results proximately from the breach.    And whether the parties, at the making of the contract, contemplated or had in view the damages to result from a breach of such contract, or not, does not in the least vary the question, or the measure of recovery." To test the question, let us suppose that in a suit for a breach of contract, the plaintiff makes proof of damage, reasonably certain as to amount, which is the natural result—that is, the result according to the usual course of things—of the breach of contract.    Would any one attempt to defend on the ground that such damages were not, in fact, in contemplation of the parties, when they entered into the contract?

Mr. Baron Alderson's language should be interpreted in the light of the facts he was dealing with.    Plaintiffs were claiming a recovery, based on circumstances that were special and exceptional.    Those circumstances were not suggested, nor likely to be suggested, by the appearance or nature of the article which was the subject of the contract.    Hence, the injury complained of would not arise in the natural, or usual course of things.    If the special, ulterior purposes were disclosed, they would then become an element of the duty imposed by the contract.    The thing of apparently little value—the transaction of apparently minor importance—would thus be raised to great value and commanding importance.    This enhanced value, this stimulated diligence, Baron Alderson, as we think, attempted to describe, as being the damages resulting from a breach, "within the contemplation of the parties."    Is it not rather a bringing within the contemplation of the parties the special facts which magnify the transaction, and, as a consequence, the injury likely to ensue from a breach of the contract?

We are aware that the language, or phrase we have been criticising, has been repeated and re-repeated in many judicial opinions.    It has come to be almost a stereotyped phrase; so general, that it may appear to be temerity in us to question its propriety.    We think, however, it is in itself inapt and inaccurate, and that its import has been greatly and frequently misunderstood.    It is often employed in apposition to, or as the synonym of that other qualifying clause—*the natural result of*, or *in the usual course of things*.    We think this a great departure from the sense in which Baron Alderson intended it

12

should be understood. Altogether, we think it obscure and misleading, and that an attempt to install it as one of the canons, has caused many, very many erroneous rulings.

But even if we retain the expression we have been commenting on, as a qualifying property of recoverable damages, it is a rule by no means of universal application. \ Speaking of the decision in *Hadley v. Baxendale*, Ch. B. Pollock, in *Newport Dock Co. v. Wilson*, 1 L. R. (Exchr.) 177, said: "It is quite true that the case is not applicable to, and does not decide every case. No rule, no formula could do that. . . . No precise, positive rule can embrace all cases." It may be, and doubtless is well adapted to cases like *Hadley v. Baxendale*, where the subject of the contract, relatively insignificant in its primary aspect and apparent purpose, was yet, by special circumstances, magnified into much greater dimensions. [ This rule was properly applied in that case, because a knowledge of the extrinsic facts would naturally stimulate diligence. Can such a rule, with any propriety, be applied to transactions or lines of dealing, in which the same measure of diligence is required in each act or function, without regard to the quantum of interest to be affected by it? Legal dogmas should rest on some principle, which can be appreciated.

The telegraph is a modern discovery. Speedy communication is its boasted merit, the object of its use. It is much more expensive than communications by mail, and therefore would not be resorted to, if time were not of its very essence. Its tariff of rates is graduated by the number of words employed, not by the pecuniary value of the telegram, nor by the magnitude of the interests it concerns. With few exceptions, imposed by public exigency, it is governed by the law of the mill. Messages must be sent in the order of their handing in, without favor or partiality, without delay, and without reference to the value of the interests to be affected.—Shear. & Redf. on Neg. § 557; *Barren v. Lake Erie Tel. Co.*, 1 Amer. Law Regr. 685; *Birney v. N. Y. & W. Tel. Co.*, 18 Md. 341; *W. U. Tel. Co. v. Ward*, 23 Ind. 377; *Leonard v. N. Y., A. & B. Tel. Co.*, 41 N. Y. (2 Hand) 544; *Squire v. W. U. Tel. Co.*, 98 Mass. 232; *Parks v. Alta Cal. Tel. Co.*, 13 Cal. 422. A failure from uncontrollable causes, such as electrical storms, etc., would excuse the company's delay in delivery; but no such excuse is shown here. In Scott & Jarnigan's note to section 166, Law of Telegraph, commenting on *Shields v. W. & N. O. Tel. Co.*, is this language: "Why has the operator any right to know what the message refers to? Or, why the necessity of drawing inferences or conjectures in reference thereto? How will such knowledge aid him in the discharge of his obligation to send the message correctly? What differ-

ence does it make, in this respect, whether the message ' conveyed an order to purchase, or an account of sales?' Would such knowledge aid him in the correct transmission of the message?" They thought the view taken in *Shield's case* "was not the correct one." We fully concur with Messrs. Scott & Jarnigan. and hold that the liability of the telegraph company does not depend on the knowledge the operator may have of the contents of the message.

The fifth ground of demurrer is, "That the complaint shows that the dispatch was in relation to a future contract in cotton, in which the parties did not comtemplate the delivery of cotton, but at the time appointed for delivery, the transaction should be closed upon the basis of the then market price of the cotton, the losing party paying the difference." We do not think the complaint shows there was to be no delivery, and consequently we need not, and do not consider the question attempted to be raised by this ground of demurrer.

The first three grounds of demurrer raise the same question, and deny the right of the plaintiff to maintain the action in his own name. We think this ground of demurrer was also improperly sustained. The point of this objection to the complaint is, that Renfro Brothers are shown to have made the contract with the telegraph company in their own name; and the contract not being for the payment of money, the suit should have been brought in their name. This point is certainly well taken, if the proper construction of the complaint is that which is contended for.—Code of 1876, § 2890; *Johnson v. Martin*, 54 Ala. 271; *Masterson v. Gibson*, 56 Ala. 56; *Agnew v. Leath*, 63 Ala. 345. It is certainly true that the message proposed to be sent, as copied in the complaint, is signed Renfro Bros. But the message is not the contract declared on. The complaint avers, in substance, that the plaintiff made the contract through his agents, Renfro Bros. The contract declared on we suppose was oral. It is not averred that it is in writing. If, in delivering and paying for the message to be forwarded, the Renfro Bros. disclosed the name of their principal, for whom they were acting, that constituted it plaintiff's contract, upon which he can, and should sue in his own name. Such proof is admissible under the complaint as framed, and, if made, will sustain the averment. This ground of demurrer was not well taken.

The judgment of the circuit court is reversed, and the cause remanded.