THOMAS W. PEARSALL, RESPONDENT, *v.* THE WESTERN UNION TELEGRAPH COMPANY, APPELLANT.

*Error in transmitting a telegram — the sender is not bound by rules of which he has no knowledge — a stockholder of a corporation is not chargeable with knowledge of rules adopted by its directors.*

On July 31, 1884, some person in behalf of the plaintiff delivered to a telegraph operator at a station of the Long Island Railroad, without prepayment, a message for transmission to New York, addressed to " T. W. Pearsall & Co.," directing the purchase of 1,000 shares of Western Union Telegraph stock. The message, which was written not upon the partly printed blanks of the company but upon an ordinary sheet of note paper, was delivered at the office of T. W. Pearsall & Co., in an envelope addressed simply "T. W. Pearsall." As no one in the office was authorized to open a message thus addressed, it remained unopened until the plaintiff's return, on the next day, when he bought the stock at a higher price than he would have been compelled to pay for it on the day when the message was sent.

The defendant offered evidence tending to show that it had established reasonable rules and regulations to guard against mistakes, requiring the sender of a message to have it repeated, and also offered, but was not allowed, to show that this regulation was printed upon its ordinary message blanks.

*Held*, that the evidence was properly excluded, as the message was not written upon one of the blanks, and the plaintiff testified that he had never read the printed matter on such blanks, nor had he any knowledge of the terms and conditions specified thereon.

That the fact that he was familiar with the general appearance of the blanks, and that bundles of them lay in his office, and that he had been in the habit of using them, did not estop him from denying any knowledge of the notice or its contents.

*Breese* v. *United States Telegraph Company* (48 N. Y., 132); *Western Union Telegraph Company* v. *Buchanan* (35 Ind., 429) distinguished.

The defendant, claiming that the plaintiff, as a stockholder of the company, was chargeable with notice of the rules of the company, offered, but was not allowed, to prove the minutes of a meeting of directors, held in 1856, reciting the adoption of certain rules as to the liability of the defendant for mistakes or delays in messages.

*Held*, that the evidence was properly excluded, for several reasons, viz. :

That the rules to which the minutes referred had been superseded by new ones.

That knowledge of the existence of the rules could not be imputed to the plaintiff merely because he was a stockholder.

While the owner of shares in an incorporated company is, under some circumstances, chargeable with a knowledge of the contents of its books, he is not, simply as a stockholder, bound to know the rules and regulations which the

directors may prescribe for the transaction of the business of the company with the public generally, merely because such rules and regulations appear recorded on the minute books of the corporation.

APPEAL by the defendant from a judgment entered upon the verdict of a jury at circuit, and from an order denying a motion for a new trial made upon the minutes.

*Burton N. Harrison,* for the appellant

*Thomas G. Shearman,* for the respondent.

BARTLETT, J. :

This is an action to recover damages for the alleged negligence of the defendant in failing accurately to transmit a telegraphic message from Great Neck, Long Island, to the city of New York. On July 31, 1884, some person in behalf of the plaintiff, delivered to a telegraph operator at the station of the Long Island Railroad at Great Neck, without prepayment, a message for transmission to New York, in the following words :

> "GREAT NECK, L. I., *July* 31*st.*
> " T W. PEARSALL & Co., *Mill's Building, New York city.*
> " Buy one thousand Western Union Telegraph.
>
> "T. W. PEARSALL."

This message was written, not upon one of the partly printed blanks of the Western Union Telegraph Company, but on an ordinary sheet of note paper with no conditions whatever printed thereon. It was delivered at the office of T. W. Pearsall & Co., in New York, where the company's charge of twenty-five cents was paid, on the morning of the same day But the words "& Co." in the address were omitted, and the telegram was inclosed in an envelope addressed simply to "T. W Pearsall." No person in the office of the firm possessed authority to open a message thus addressed to the plaintiff personally. Consequently the telegram remained unopened until Mr. Pearsall's arrival in the city on the following day. In the meantime, the price of Western Union Telegraph Company stock, to which the message related, had advanced ; and the plaintiff, who bought the stock shortly after his arrival in New York, had to pay more for it than his firm would have been

obliged to pay on the day when the message was sent. He brings this suit to recover the amount represented by the advance in price.

It is contended, in behalf of the defendant, that the telegraph operator at Great Neck was not the agent of the Western Union Telegraph Company, and, therefore, that the corporation is not liable for any negligence on his part. This operator worked in the depot for his father, who was the station agent of the Long Island Railroad Company, which maintained a telegraph office there, used principally for reporting the movements of trains. There was a sign of the Western Union Telegraph Company at the station, however, and this operator took all the business that was offered at that place for that company. The contract between the defendant and the railroad corporation provided that at all telegraph stations on the line of the railroad, the railroad employees acting as agents of the telegraph company, should receive, transmit and deliver such commercial or paid messages as might be offered at the tariff rates of the telegraph company, and should pay over to the telegraph company the receipts derived from such business. This was a commercial message, paid for at the place to which it was sent. Although the boy who undertook to transmit it was not directly in the employ of the railroad company, the functions which he performed for his father in reference to the business of the railroad, and the services which he was permitted to perform as a telegraph operator, not only for the railroad, but for the telegraph company, can leave no doubt that he acted as the agent of the defendant in receiving and sending the plaintiff's message, so as to make the defendant responsible for any omission of duty with reference thereto on his part.

The defendant offered evidence tending to show that it had established reasonable rules and regulations to guard against mistakes in the transmission of telegraphic messages, which required the sender of a message to have it repeated; that is, telegraphed back to the office whence it came for purposes of comparison. It also offered evidence showing that notice of this regulation was printed upon its ordinary message blanks, but counsel was not allowed to read this notice to the jury. In view of the uncontradicted testimony of the plaintiff, it was immaterial. The message in question was not written upon one of the ordinary blanks of the

defendant, nor had the plaintiff ever read the printed matter on such blanks, nor had he any knowledge of the terms and conditions specified thereon. Under these circumstances, it is difficult to see on what principle he could be held to have assented to the regulation in regard to unrepeated messages, or how he could be bound thereby. It is true he was familiar with the general appearance of the blanks and had been for many years, and had frequently sent messages written on such blanks. Bundles of them lay in his office for use, and he had been in the habit of taking blanks from among these and of writing and sending messages on them himself. These facts, however, do not estop him from denying any knowledge of the notice or its contents. In *Breese* v. *United States Telegraph Company* (48 N. Y., 132), the principle of estoppel was applied because the sender of the message, after abundant time and opportunity to read the printed matter on the company's blanks in his possession, wrote the telegram on one of those blanks. Hence, says Earl, C., in that case, when the messsage was thus written and brought to the office of the company its agent had the right to assume and believe that the sender accepted the terms, and assented to and understood the agreement limiting liability for unrepeated messages. But nothing of the sort occurred in the present case. The message was written on a sheet of common white paper and was thus accepted for transmission. If the plaintiff is to be held bound by the regulations of the defendant company just as much as though he had written this message on one of its blanks, it can only be upon proof that he knew what those regulations were. This is the extent to which the opinion goes in the case of the *Western Union Telegraph Company* v. *Buchanan* (35 Ind., 429). But the plaintiff testifies positively that he had no knowledge of these regulations, and we think a finding in opposition to his testimony on this subject, notwithstanding the opportunity he had to read the printed matter on the blanks, would have been so manifestly against evidence as to require the court to set aside the verdict.

It is insisted, however, that the plaintiff must be deemed to have known the rules of the defendant as to unrepeated messages, because he was a shareholder in the Western Union Telegraph Company. On this theory, the minutes of a meeting of the directors of the company, held in 1856, were offered in evidence, reciting

the adoption of certain rules as to the liability of the defendant for mistakes or delays in messages. These minutes were properly excluded, for several reasons. In the first place, the rules to which they refer appear to have been superseded by new ones promulgated in 1884. Then there is no evidence whatever that the plaintiff actually knew of their contents, and no such knowledge can be imputed to him merely because he was a stockholder. While the owner of shares in an incorporated company is, under some circumstances, chargeable with a knowledge of the contents of its books, he is not, simply as a stockholder, bound to know the rules and regulations which the directors may prescribe for the transaction of the business of the company with the public generally, merely because such rules and regulations appear recorded on the minute books of the corporation. No case is cited by the learned counsel for the appellant which sustains his position on this point.

The appellant also complains because the court charged the jury that the misdirection of the message, and the delivery, addressed to T. W. Pearsall at the office of his firm, when it should have been addressed to T. W. Pearsall & Co., was of itself *prima facie* evidence of negligence. This instruction is sustained by authority. In *Rittenhouse* v. *Independent Line of Telegraph* (44 N. Y., 265) it is said : " The defendant was liable on the ground of negligence in the transmission of the message, and the negligence is proved by showing that it did not transmit the message in the form in which it was delivered to it. The burden was upon it to show that the mistake happened without its fault." Indeed, if any other rule prevailed, it would be exceedingly difficult ever to enforce the liability of a telegraph company for negligence of this character, the entire line and apparatus being so exclusively within its own control, as to render it almost impossible for an outsider to obtain any information as to the causes which led to the mistake.

There is no force in the suggestion that the plaintiff himself was negligent in the manner in which he sent the message. The measure of damages adopted by the trial court seems to have been correct. The refusal to charge that there was no evidence of gross negligence or willful misconduct on the part of the defendant, was not error. The jury had been carefully instructed in the main body of the charge that the defendant was liable only for ordinary care,

and that the fact of a misdirection and misdelivery being proved, and not denied, there was a *prima facie* case of want of ordinary care. Nothing was said about gross negligence by the court, or by anybody but the defendant's counsel, until this request was made, and then the court simply refused to charge it. The case as presented to the jury, involved no question of gross negligence or willful misconduct, and there was no occasion to give any instruction on the subject, one way or the other.

The judgment and order denying the motion for a new trial should be affirmed with costs.

. VAN BRUNT, P. J., and LAWRENCE, J., concurred.

Judgment and order affirmed with costs.