No. 11,045.

WESTERN UNION TELEGRAPH COMPANY v. PENDLETON.

TELEGRAPH.—*Failure to Transmit Message Beyond State.—Penalty.—Constitutional Law.—Interstate Commerce.—Police Power.*—The statute, R. S. 1881, section 4176, imposing a penalty upon a telegraph company for failure to transmit a message as therein required, even as applied to a message sent to another State, is not a violation of the Constitution of the United States giving to Congress the power to regulate commerce between the States, but is a valid exercise of the police power which belongs exclusively to the States.

SAME.—*Statute Construed.*—The sender of the message has the right to recover the penalty given by the statute. It is a penalty for a breach of duty arising in this State, and not damages for the breach of contract, and the right to recover is not affected by the fact that the particular act constituting the specific breach of duty occurred in another State.

From the Shelby Circuit Court.

*J. E. McDonald, J. M. Butler* and *A. L. Mason,* for appellant.

*E. K. Adams* and *L. J. Hackney,* for appellee.

ELLIOTT, J.—Our statute provides that a telegraph company with a line of wires wholly or partly within the State shall, during the usual office hours, receive despatches, and, on payment or tender of the usual charges, according to the regulation of the company, transmit messages with impartiality and good faith in the order in which they are received, and, for a failure to perform this duty, shall be liable to a penalty of $100, to be recovered by the person whose despatch is postponed or neglected.

The validity of this statute is contested upon the ground that it infringes the provision of the Constitution of the United States which invests Congress with power " to regulate commerce with foreign nations and among the several States." This position can not, of course, be even plausibly maintained in cases where the line is wholly within the State; in such cases the business is purely domestic and not inter-

state, but here the line of the company extends beyond the State, and the message delivered to the company was undertaken to be transmitted to a point in Iowa.

The telegraph is an instrument of commerce. Intercourse by telegraph is commercial intercourse, and where it extends beyond the State is interstate and subject to the control of Congress. *Pensacola Tel. Co.* v. *Western U. T. Co.*, 96 U. S. 1; *Telegraph Co.* v. *Texas*, 105 U. S. 460.

There is much conflict of opinion in the decisions of the courts of last resort upon this subject, and it will be found to be no easy task to extract from the decisions well defined rules. The study of the many able opinions that have been delivered by our great judges, beginning with that of the great chief justice, JOHN MARSHALL, is an interesting one, but we do not feel called upon to review these cases. Three theories seem to have been maintained, one that the States can not legislate upon the subject at all, whether Congress has or has not exercised the power vested in it; another, that when Congress has exercised its power, the States can adopt no valid legislation; and still another, that the States may legislate upon the subject even though Congress has exercised the power vested in it by the Constitution. We think, however, that the ultimate conclusion deducible from the later decisions is, that the States can not embarrass commercial communication, abridge the freedom of commerce, discriminate in favor of the products of one State, lay burdens upon the instruments of commerce, or exact licenses from persons, natural or artificial, engaged in interstate commerce, and that this is so whether Congress has or has not legislated upon the subject. *Gibbons* v. *Ogden*, 9 Wheat. 1; *Brown* v. *Maryland*, 12 Wheat. 419; *Willson* v. *Blackbird, etc., Co.*, 2 Peters, 245; *City of New York* v. *Miln*, 11 Peters, 102; *Thurlow* v. *Massachusetts*, 5 How. 504; *Smith* v. *Turner*, 7 How. 283; *Cooley* v. *Board, etc.*, 12 How. 299; *State* v. *Wheeling, etc., Co.*, 13 How. 518; *Smith* v. *State*, 18 How. 71; *Gilman* v. *Philadelphia*, 3 Wal. 715; *Railroad Co.* v. *Pennsylvania*, 15 Wal. 232; *Welton* v.

*State,* 91 U. S. 275 ; *Cook* v. *Pennsylvania,* 97 U. S. 576 ; *Webber* v. *Virginia,* 103 U. S. 344 ; *Telegraph Co.* v. *Texas, supra.*

Accepting this conclusion as the law which rules our decision, we still have no hesitation in affirming that our statute is not borne down by it. No discrimination is made in favor of any person, or in favor of any article of commerce ;. the freedom of commercial intercourse is not abridged, and no new duty or burden is imposed upon the company. The statute secures to all alike the privilege of demanding that the duties of the corporation be performed with diligence,. impartiality and good faith. It enforces an existing duty, and provides a penalty, but it confines the duty to no class and denies the penalty to none. It is impossible to conceive the slightest restriction upon commercial intercourse, or the faintest discrimination in favor of any person or thing. Granting, then, the lack of power in the State to abridge the freedom of commerce, or to discriminate in favor of men or things, we may still maintain that telegraph companies, having offices and doing business in our State, may be compelled to discharge their duties diligently and impartially, because in requiring this a police power, inherent in all sovereignties,. is rightfully exercised. We do not maintain that, under the guise of a police regulation, the State can abridge the freedom of commercial intercourse, or discriminate in favor of the products of one State, or grant commercial rights to the citizens of some particular State and deny them to others,. but we do maintain that the sovereign State has power to enact laws requiring persons, artificial or natural, doing business within its borders, to transact that business with fairness, diligence and impartiality. A statute operating upon persons within the State, declaring an existing duty, adding neither new nor additional ones, usurps no functions of the Federal Congress, and infringes no constitutional provision. We are not willing to concede that the police power inherent in all sovereignties is annihilated in all matters touching interstate commerce by the provisions of the National Consti-

tution to which we have referred; on the contrary we are satisfied that the power is not impaired or limited, except to the extent that it may not be exercised in such a manner as to abridge, embarrass, or interfere with the freedom of interstate commerce, or so as to encroach upon valid congressional legislation. The right to exercise the police power is not so hedged in as that it can not be exercised upon instruments or articles of commerce; it may be exercised, even in commercial affairs, provided that it is not so exercised as to impose burdens or restrictions which limit or impede the free course of commerce. *Sherlock* v. *Alling*, 93 U. S. 99; *County of Mobile* v. *Kimball*, 102 U. S. 691.

The police power is the right to regulate the enjoyment of property, to maintain public order, to secure the rights of citizenship, and to prevent injury to private rights. This power can not be exercised within State limits by the Congress of the Nation. *United States* v. *Dewitt*, 9 Wal. 41; *United States* v. *Reese*, 92 U. S. 214; *United States* v. *Cruikshank*, 92 U. S. 542; *Munn* v. *Illinois*, 94 U. S. 113; *Civil Rights Cases*, 109 U. S. 3. The power of enacting laws upon this subject resides solely and exclusively in the States, and extends to all matters of personal and property rights within the States. A denial of the right to legislate upon matters connected with commerce and its instrumentalities would result in evils of great magnitude. If there be no such power, then the State can not regulate the speed of railroad trains where the railroad line extends beyond the State, nor enact any law providing for the safety of passengers and the community, and if the States possess no such power, then it has no existence, because, by the conclusive adjudications of the highest court, the police power does not reside in Congress. The States must, and do, possess this power, even with respect to commercial affairs. True, the power is somewhat limited, but it nevertheless exists.

We assume that the power to enact laws declaratory of a duty exists, and it remains to determine whether our statute

is a valid exercise of this sovereign power. In *Munn* v. *Illinois*, *supra*, the act of the Legislature of Illinois providing for the storage and shipment of grain by warehousemen was held valid, and in speaking of the effect of the constitutional provision respecting commerce, the court said of the warehousemen: "Incidentally they may become connected with interstate commerce, but not necessarily so. Their regulation is a thing of domestic concern, and, certainly, until Congress acts in reference to their interstate relations, the State may exercise all the powers of government over them, even though in so doing it may indirectly operate upon commerce outside of its immediate jurisdiction."

The court in another case said: "Yet it is not everything that affects commerce that amounts to a regulation of it, within the meaning of the Constitution." *R. R. Co.* v. *Penn.*, *supra*. Strong language was used in *City of New York* v. *Miln*, *supra*, but we only have space for the following brief extract: "That all those powers which relate to merely municipal legislation, or what may, perhaps, more properly be called *internal police*, are not thus surrendered or restrained; and that, consequently, in relation to these, the authority of a State is complete, unqualified, and exclusive." This language was used in a case where the State law directly affected, and in a very material degree, foreign commerce. The case from which we have quoted, and its principle, have been applied in many instances, and among the cases furnishing a striking illustration of the rule declared and of its application is that known as the *Slaughter House Cases*, 16 Wal. 36. In the case of *Cooley* v. *Board, etc.*, *supra*, a State law requiring vessels to take pilots, and prescribing a penalty for a breach of duty, was held valid. The court sustained a State statute, levying taxes upon articles of commerce in *Woodruff* v. *Parham*, 8 Wal. 123. It was said of that statute, what may with truth be said of ours, that "There is no attempt to discriminate injuriously against the products of other States or the rights of their

citizens, and the case is not, therefore, an attempt to fetter commerce among the States, or to deprive the citizens of other States of any privilege or immunity possessed by citizens of Alabama." Judge Cooley says: "And it can not be doubted that there is ample power in the legislative department of the State to adopt all necessary legislation for the purpose of enforcing the obligations of railway companies as carriers of persons and goods to accommodate the public impartially, and to make every reasonable provision for carrying with safety and expedition." Cooley Const. Lim. (5 ed.) 718. In *Harrigan* v. *Connecticut River, etc., Co.*, 129 Mass. 580 (37 Am. R. 387), a statute prohibiting, except in a specified manner, the rafting of logs from another State through Massachusetts was held valid, and this decision certainly goes much farther than we are required to do here. It has been held by this court in several cases, that the statute may be enforced although the message is received for transmission to another State, and if we should hold the law invalid we should be compelled to overrule these cases. *Western Union Tel. Co.* v. *Lindley*, 62 Ind. 371; *Western Union Tel. Co.* v. *Hamilton*, 50 Ind. 181; *Carnahan* v. *Western Union Tel. Co.*, 89 Ind. 526. This doctrine has been asserted by other courts. *Western Union Tel. Co.* v. *Blanchard*, 68 Ga. 299; S. C., 45 Am. R. 480, 486, auth. n. It is true that in these cases the constitutional question was not argued, but it is nevertheless involved and was necessarily decided. We are satisfied that the enactment of our statute was a legitimate exercise of the police power of the State, and that as the statute infringes no provision of the Constitution, trenches upon no law of Congress, and does not interfere with the freedom of interstate commerce, it is valid and effective.

It is argued that, as the message was received for transmission to a point in Iowa, the place of performance is not in this State, and, therefore, our law can not prevail. This argument rests upon an assumption that can not be made

good.   The action is not for a breach of contract, but to re-
cover a penalty given to the sender of a message for a breach
of duty by the telegraph company.   The argument of coun-
sel is able and ingenious, but it is plainly fallacious.   No
question of the right to damages is involved, the single
question is as to the right to recover a statutory penalty.
Counsel are in error in asserting that there is conflict in our
cases upon this subject; from first to last it has been steadily
held that the statute is a penal one, awarding, not liquidated
damages, but a penalty.   It is also decided by these cases that
the foundation of the right is the contract with the corpora-
tion, but in none of them is it intimated that the recovery is
for damages for a breach of contract; on the contrary, all our
decisions affirm that the recovery is for a penalty given by
statute to a private individual.   *Carnahan* v. *Western Union
Tel. Co., supra; Western Union Tel. Co.* v. *Adams,* 87 Ind. 598
(44 Am. R. 776); *Western Union Tel. Co.* v. *Roberts,* 87 Ind.
377; *Western Union Tel. Co.* v. *Gougar,* 84 Ind. 176; *Rogers*
v. *Western Union Tel. Co.,* 78 Ind. 169 (41 Am. R. 558); *West-
ern Union Tel. Co.* v. *Axtell,* 69 Ind. 199; *Western Union Tel.
Co.* v. *Lindley, supra; Western Union Tel. Co.* v. *Ferguson,*
57 Ind. 495; *Western Union Tel. Co.* v. *Hamilton, supra;
Western Union Tel. Co.* v. *Buchanan,* 35 Ind. 429 (9 Am. R.
744); *Western Union Tel. Co.* v. *Ward,* 23 Ind. 377.

The action given by the statute is for a penalty, and the
right to maintain it is in the sender of the message, who pays
or tenders the compensation provided by the rules and regu-
lations of the company.   The cases we have cited all proceed
upon this theory, and it is clear that under the provisions of
the statute no other theory could be correct.   The English
cases deny that the person to whom the message is sent can
maintain an action for damages against the company for the
reason that there is no privity of contract.   *Dickson* v. *Reu-
ter's Tel. Co.,* L. R. 2 C. P. D. 62; *Playford* v. *U. K. Tel. Co.,*
L. R. 4 Q. B. 706.   The American cases however take a differ-
ent view of the subject, for they hold that if the error occurs in

transmitting the message, the person to whom the message is sent may maintain an action for damages, but, while this is held, it is conceded that the holding constitutes an exception to the general rule. *Western Union Tel. Co.* v. *Blanchard,* 45 Am. R. 486 n.; 2 Wharton Con., section 791; 17 Cent. L. Jour. 466; 15 Am. L. Rev. 231. Wharton says that the better opinion is that where the action is for non-delivery, the sender only can maintain the action. Our cases of *Western Union Tel. Co.* v. *Meek,* 49 Ind. 53, *Western Union Tel. Co.* v. *Hopkins,* 49 Ind. 223, and *Western Union Tel. Co.* v. *Fenton,* 52 Ind. 1, were actions for damages based upon a statutory provision entirely different from that which gives the right to recover a penalty, and can not be deemed in conflict with the decisions declaring the right of action for the penalty to be in the sender of the message. It is our settled conviction that our cases decide, and rightly decide, that the right to recover the penalty is in the sender of the message.

The statute operates in favor of the sender of a message delivered at an office in this State, and upon a corporation represented within our borders by its agents and officers. The parties are, therefore, within our jurisdiction. The duty which the statute assumes to enforce is one arising in Indiana, for it grows out of and is founded upon an undertaking entered into in this State. The parties and subject-matter being within our jurisdiction, they are subject to our laws. Persons and property within the jurisdiction of a State are subject to the laws of that State.

The duty which the statute seeks to enforce is owing here in Indiana and not elsewhere; it was here that the contract was made which imposed the duty on the telegraph company, and it was here that the failure occurred, for the message was not transmitted, as the law commands, in good faith and with diligence and impartiality. The duty which the company failed to perform was not a duty owing in Iowa, but was a duty owing in Indiana, where the parties executed the contract out of which the duty arose. The duty of the com-

pany did not end at the State line; it extended throughout the whole scope of the undertaking, and required the message to be transmitted and delivered, in good faith and with reasonable diligence, to the person to whom it was sent. The breach of duty, no matter where the specific act constituting it occurred, was a breach here and not elsewhere. The duty is a general and continuous one, and, if not performed, the failure to perform, irrespective of the place where the failure occurred, is a breach of the duty at the place of its creation. There is not the slightest resemblance between such a case as this and cases of distinct and independent wrongs occurring wholly beyond the limits of the State; nor is there the remotest analogy between such a case as the present and the case of an attempt to enforce in one jurisdiction the laws of another State or Nation. There is here no attempt to enforce the law of another State, nor to enforce a penalty for a breach of a duty created by a foreign statute. The action is in an Indiana forum to enforce a duty created by an Indiana statute, and arising out of an Indiana contract made by parties within the State. We see no reason to depart from the rule laid down in the cases of *Western Union Tel. Co.* v. *Hamilton, supra*, *Western Union Tel. Co.* v. *Lindley, supra*, and *Carnahan* v. *Western Union, T. Co., supra*, and we not only refuse to overrule them, but expressly and fully approve them. In holding, as we do, that our statute may be enforced, although the undertaking is to transmit the message beyond the State, we do not trench upon the doctrine that State laws have no extra-territorial effect. What we hold is that the statute operates upon the parties and the subject-matter within our jurisdiction by enforcing the performance of a duty created here, owing here, and violated here.

If a telegraph company should show a positive statute of another State commanding the delivery of messages in a certain manner, and different from that prescribed by our statute, then, it would, perhaps, be true that the company would make out a perfect defence by showing obedience to its com-

mands. In such a case the defence would not be good for the reason that our statute is bad, but because of the rule that necessity is always an excuse, and a positive law enjoining a duty creates a necessity. However this may be, the defence in this case is not valid for the reason that there is nothing in the Iowa statute which contravenes or impairs the statute of Indiana.

We have decided many times, as has been already shown, that our statute gives the right of action for the penalty to the sender of the message, and he can, of course, recover no other penalty than that prescribed by our statute. If the company should wrongfully violate the law of some other State, and be punished by the courts of that State, the punishment would not be for a violation of our law, but would be for a wrong committed against the law of another jurisdiction, so that it is impossible that the punishment should be for one and the same offence.

Our statute does not give the right to the penalty because a specific act of negligence is committed, but gives the penalty to secure the performance of a duty which springs into existence when the contract is made. It is the breach of duty that is punishable, and not the particular act which constitutes the breach. Wherever the act 'which constitutes the breach of duty is committed, whether here or in a foreign jurisdiction, the duty is broken here, where it came into being and where it was owing and should be discharged. A confusion of thought leads to a wrong conclusion, but this is cleared away when it is brought fully into view that the wrong consists in the violation of duty, and that this violation takes place where the duty exists, and where the one party owes it and the other has a right to demand that it be neither violated nor omitted. There is no conflict of law and no clashing of jurisdiction, for where the duty is owing there it is violated by an act which constitutes a breach. Mr. Thompson says: "In an action to recover the statutory penalty for failure to transmit a message from an office in one State to

an office in another State, the fact that the act of negligence which prevented the message from reaching its destination occurred out of the former will not defeat a recovery in that State." 2 Thomp. Neg. 838.    Judgment affirmed.

Filed April 4, 1884.