## The Western Union Telegraph Company v. Taylor.

1. The jurisdiction of justices' courts being limited by the constitution to " civil cases arising *ex contractu* and cases of injuries or damages to personal property," they cannot be invested by the legislature with jurisdiction over actions to recover a penalty imposed by statute upon telegraph companies for undue delay in the transmission and delivery of messages. The penalty is for the wrongful violation of a public duty, and neither in whole nor in part for a mere breach of contract.

2. A suit in a court having no jurisdiction of the subject-matter, resulting in a judgment for the defendant, is a nullity.

3. Even payment by the company of the expenses of the plaintiff incurred by reason of non-delivery of the message would not, unless received in full settlement or by way of accord and satisfaction, bar an action for the penalty.

4. The charge of the court was substantially correct, and if in some respects inaccurate, there was no material error.

5. The evidence warranted the verdict.

February 24, 1890.

Justices' courts. Jurisdiction. Constitutional law. Telegraph companies. Judgments. Nullities. Accord and satisfaction. Actions. Charge of court. Verdict. Before Judge HARRIS. City court of Macon. December term, 1888.

The telegraphic message involved was dated at Macon, Georgia, November 9th, 1887 ; directed to Mrs. Frances M. Taylor, care of Charles Taylor, Brunswick, Georgia; signed M. G. Bayne; and stated: " Case postponed. Don't come until you hear from me." The plaintiff resided in Brunswick on the corner of Wolf and G streets, number 327, about five hundred yards from the telegraph office and the same distance from the business part of the town, within the corporate limits. She was at home on November 9th, 1887, and did not receive the telegram in question. She left Brunswick on that day and went to Macon to attend court in a case there pending, which her attorney had written her was set for the 11th of the month. She was damaged so far as

expenses and time consumed in getting to Macon, say
$25. Charles Taylor, to whose care the telegram was
addressed, was her son, and he did not receive the tele-
gram. He resides in Brunswick, has resided there for
two years, is by trade a carpenter, and was there on
that day. His mother owns property on the corner of
Wolf and G streets, and it is returned for tax and oc-
cupied by him and by her. He knows a good many
people; sent several telegrams and received one from
his brother; sent one telegram on the 7th of November,
1887, and received one about the same time; this was
all the business he ever had with defendant. The
plaintiff made a written claim for damages on defendant,
making no reference to the penalty.

Defendant's manager of its Brunswick office received
the message there and turned it over to defendant's
messenger-boy to be delivered. He brought it back
undelivered, stating he could find neither plaintiff nor
her son after diligent search. The manager then re-
ported to the Macon office that no such person could be
found. The population of Brunswick was estimated at
nine thousand. The message was filed at the Macon
office at 12:10 and received at Brunswick at 3:45 p. m.
November 9th, 1887. The manager there does not
know that Mrs. Taylor lives in Brunswick; has never
heard of such a person; there was no register or city
directory; has no means of finding people except by
inquiry and by examination of the hotel arrivals; did
not ask the clerk of council, and knew nothing about
plaintiff''s taxes; tried to find where Charles Taylor
was, but the only Charles Taylor she knew lived over
a mile away from the office; made diligent inquiry and
could find no such person in Brunswick. The messen-
ger-boy (fourteen years old) did not deliver the message
because he could not find plaintiff nor her son; tried
to find Charles Taylor, but could find no one of that

name, and could not hear of any one named Mrs. Frances M. Taylor; inquired all about town, of every one, and not being able to find any person of that name, carried the message to a person named Taylor who said it was not for him; did not know whether Mrs. Taylor lived in Brunswick; never heard of such a person; asked a great many prominent people, but does not remember who; did not ask the city clerk and did not deliver the message to any one; left the office about half past four o'clock and returned in about an hour.

The jury found for the plaintiff $100. The defendant moved for a new trial on the grounds, among others, that the verdict was contrary to law and evidence; refusal of a nonsuit, the motion being on the ground that plaintiff's testimony showed she was not entitled to recover, it appearing therefrom that she had not complied with her contract, but in her claim for damages had waived her claim for the penalty by simply claiming damages; and because of instructions in the charge of the court as to the negligence or diligence of the defendant in the transmission of the message, the objections being that such issues were not pertinent to a suit for failure to deliver it. For report of the other and main ground of error, see the first part of the opinion.

GUERRY & HALL, for plaintiff in error.

M. G. BAYNE, by brief, *contra.*

BLECKLEY, Chief Justice.

The action was by Mrs. Taylor against the telegraph company, to recover a penalty of one hundred dollars for failure to deliver to her a telegram sent from Macon to Brunswick by Bayne and addressed to her. It was founded on the act of 1887 (pamph. p. 111), which reads as follows: "Every electric telegraph company with a line of wires wholly or partly in this State, and engaged in telegraphing for the public, shall, during the usual office hours, receive dispatches, whether from other tel-

egraphic lines or from individuals; and on payment or tender of the usual charge, according to the regulations of such company, shall transmit and deliver the same with impartiality and good faith, and with due diligence, under penalty of one hundred dollars, which penalty may be recovered by a suit in a justice or other court having jurisdiction thereof, by either the sender of the dispatch, or the person to whom sent or directed, whichever may first sue : Provided, that nothing herein shall be construed as impairing or in any way modifying the right of any person to recover damages for any such breach of contract or duty by any telegraph company, and said penalty and said damages may, if the party so elect, be recovered in the same suit. Such companies shall deliver all dispatches to the persons to whom the same are addressed, or to their agents, on payment of any charges due for the same: Provided, such persons or agents reside within one mile of the telegraphic station, or within the city or town in which such station is. In all cases the liability of said companies for messages in cipher, in whole or in part, shall be the same as though the same were not in cipher." The company pleaded specially in bar of the action that Bayne, the sender of the message, had sued, prior to the filing of this suit, for the same penalty in a justice's court, and that a recovery was had by the company. The plea alleged that the justice's court was a court of competent jurisdiction, but upon motion of plaintiff's counsel the plea was stricken on the ground that the justice's court had no jurisdiction. The jury having found for the plaintiff, the company moved for a new trial, because of this ruling, and on various other grounds. This motion was overruled.

1. The general scheme of the constitution in conferring jurisdiction upon the inferior courts which it specifies is to deal exhaustively with the subject-matters

which it mentions and enumerates. This scheme extends also, even as to the superior court, to means and modes of exercising jurisdiction, as, for instance, new trials and writs of *certiorari*. *Pitts* v. *Carr*, 61 *Ga.* 454; *Maxwell* v. *Tumlin*, 79 *Ga.* 570 ; *Pope* v. *Jones*, *Id.* 487. Doubtless the legislature might by statute confer additional jurisdiction on some of the courts and magistrates mentioned in the constitution, but to do so the material for such superadded jurisdiction would have to be drawn from other subject-matters ; that is, from such as the constitution has not dealt with expressly in making distribution of judicial powers amongst the inferior courts, etc., which it enumerates. The act of 1887, above recited, is certainly a legislative attempt to clothe justices' courts with jurisdiction over actions for penalty, and whether the attempt can be held efficacious or not depends upon a right classification of such actions with reference to article VI, section VII, paragraph II (Code of 1882, §5153) of the constitution of 1877. The paragraph reads as follows : "Justices of the peace shall have jurisdiction in all civil cases, arising *ex contractu*, and in cases of injuries or damages to personal property, when the principal sum does not exceed one hundred dollars, and shall sit monthly at fixed times and places ; but in all cases there may be an appeal to a jury in said court, or an appeal to the superior court, under such regulations as may be prescribed by law." The corresponding provision in the constitution of 1868 (Code of 1873, §5104) was as follows : "The justices of the peace shall have jurisdiction, except as hereinafter provided, in all civil cases where the principal sum claimed does not exceed one hundred dollars, and may sit at any time for the trial of such cases; but in cases where the sum claimed is more than fifty dollars, there may be an appeal to the superior court, under such regulations as may be prescribed by law." It is manifest that the later constitution intended

to narrow the earlier one in respect to the jurisdiction of justices' courts over civil cases. Both constitutions fix the same limit as to amount, but in one there is no limit whatever as to the nature of civil cases over which jurisdiction may be exercised, save where exclusive jurisdiction is conferred on some other court, while in the other the cases are such only as arise *ex contractu* or from torts to personal property. Though the legislature may, perhaps, confer at will jurisdiction upon justices' courts or justices of the peace touching some subject-matters, the subject-matter of " civil cases," in so far as these courts or magistrates can take cognizance of the same, is dealt with exhaustively by the constitution. The legislature has no more power to invest them with jurisdiction over civil cases not arising *ex contractu*, or from torts to personal property, than over cases involving more than one hundred dollars principal, or those arising *ex delicto* from injuries to real property. It follows that, unless an action for a penalty is one arising *ex contractu* within the sense and meaning of. the constitution, the justice's court which entertained and decided the suit brought by Bayne, the sender of the message, against the company, was without jurisdiction, for it is manifest that the suit was not for injury or for damage to personal property.

2. The decisive question, then, is whether an action for the penalty imposed upon telegraph companies by the act of 1887 is one arising *ex contractu*. Had the expression been civil cases in form *ex contractu*, there would have been no doubt as to its embracing actions for a penalty, for debt is a form of action *ex contractu*, and that debt upon a statute for a penalty definite in amount was generally, if not always, maintainable, is quite certain. 1 Chit. Pl. 112, 371–375 ; Bullard *v.* Bell, 1 Mason, 299. But though in form *ex contractu*, the action for a penalty was, and still is, founded upon

a tort   1 Chit. Pl. 45 ; Chaffee *v.* U. S., 18 Wal. 516 ; Martin *v.* McNight, 1 Overton, 330.   In McCoun *v.* R. R. Co., 50 N. Y. 176, which was a suit brought to recover a penalty or forfeiture under a statute to prevent extortion by railroad companies, Allen, J., said: "Upon the question actually decided by the court below, I am of the opinion that that court erred in holding the summons to have been regularly issued under the first subdivision of §129 of the code.   The actions within that subdvision must 'arise on contract and be for the recovery of money only.'   This action is for the recovery of money only, and in that respect is within the provisions of the subdivision, but is not upon contract. That term was used in its ordinary and proper sense. A contract is a drawing together of minds until they meet and an agreement is made to do or not to do some particular thing.   It may be express, or it may be implied or inferred from circumstances, and this implication is but the result of the ordinary and universal experience of mankind.   If A borrows money of B, the courts may imply a promise to repay the money, for the universal experience is that in such a case a promise is exacted and made.   An implied promise or contract is but an express promise, proved by circumstantial evidence.   It is quite distinct from that fiction by which a statute liability has been deemed sufficient to sustain an action of *assumpsit*, upon the ground that a party subjecting himself to the penalty or other liability imposed by statute has promised to pay it.   That feature does not suppose a contract, but simply a promise *ex parte*.   In this view, every man promises not to trespass on his neighbor's property, or to commit an assault upon his person, and an action of *assumpsit* might be brought and summons issued under the first subdivision of §129, for a breach of this implied contract to observe the laws.   The code was not dealing with a legal fiction

in prescribing a form of summons in actions arising on contract. A statute liability wants all the elements of a contract, consideration and mutuality, as well as the assent of the party." And Peckham, J., in the same case, said; "Is this 'an action arising on contract'? It is an action for a penalty for violating a statute. It is claimed to arise on contract, upon the principle stated in 3 Black. Com. 161, whereby a forfeiture imposed by the by-laws of a corporation upon any that belong to the body, immediately creates a debt, for which an action of debt will lie by the party injured. This principle is declared by Blackstone to be 'an implied original contract to submit to the rule of the community whereof we are members.' He then adds that the same reason may, with equal justice, be applied to all penal statutes. This principle, if carried out by the same reasoning, would abolish all actions of tort. The implied original contract to obey all statutes, by the same principle and the same reasoning, extends to all laws, whether statutory or common law. It is surely not confined to the obeying of all statute laws simply. Thus *assumpsit*, if not debt, would lie for an assault and battery, or for arson, etc. I incline to think that this provision of the code had no reference to this fiction of the law of an implied original contract to obey the laws of the land by each member of the community. But it meant what it plainly says. In §53 of the code 'an action for a penalty' is stated as impliedly different from an action on contract for the payment of money, and a justice of the peace is expressly given jurisdiction of both. The code thus recognizes the difference between actions on contract and an action for a penalty. It is not enough that the recovery is to be for 'money only,' but the action must arise on contract also, to bring the case under the first subdivision. I think it plain that this action does not arise on contract." The large and loose mean-

ing given to contracts by Blackstone (3 Com. 158-160), as including all obligations, even those arising out of the social compact, is too comprehensive to serve as a guide to the real meaning of the clause of the constitution which we are considering. Works on contracts generally have confined the term "contract" within much narrower limits. Mr. Bishop is the only writer, so far as we know, who, in a work devoted to contracts solely, has endeavored to broaden his definition of the term so as to make it reach and include what Lowrie, J., in Hertzog v. Hertzog, 29 Pa. St. 467-468, denominates "constructive contracts," which he says are "fictions of law adapted to enforce legal duties by actions of contract, where no proper contract exists, express or implied." For Mr. Bishop's definition, see Bish. on Con. §22 ; and that he intended to include, like Blackstone, the fictitious case of a statutory penalty, see §182-206. But it may be said that there is an actual contract from which the present action arises, namely, that made by Bayne as the sender of the message. That contract, however, with all its consequences except the penalty, is left intact by the act of 1887. The penalty is not given in whole or in part as compensation in damages for a violation of that contract. On the contrary, both the sender, with whom the company had a contract, and the person to whom the telegram was addressed, and with whom the company had no contract, are left in full possession of all their rights, outside of penalty, in every respect. That the penalty is imposed solely for the wrongful violation of a public duty, is manifest; and it seems to us to make no difference that this particular instance of that duty had its origin in contract. The case belongs to that particular class so well described by Mr. Bishop in his work on Non-Contract Law, §§73, 74, in which he says: "Though a tort is a breach of duty which the law in distinction from a mere contract

has imposed, yet the imposing of it may have been be-
cause of a contract, or because of it and something else
combining, when otherwise it would not have created
the duty.  In such a case commonly, the party injured
by the non-fulfillment of the duty may proceed against
the other for its breach, or for the breach of the con-
tract, at his election.  Thus, because a common carrier,
whether of goods or passengers, is a sort of public ser-
vant, the law imposes its duties upon him, a breach
whereof is a tort, though there is also a contract which
is violated by the same act."  The principle here an-
nounced is the one recognized by this court in *Head* v.
*Georgia Pacific R. R. Co.*, 79 *Ga.* 358, and in other
cases.  A striking instance of its application will be
seen in the case of Tattan v. Ry. Co., 2 El. & El. 851, in
which the terms " action founded on contract," and
" action of contract," were under construction.  See,
also, Pontifex v. Ry. Co., 3 Law Rep., Q. B. Div. 27.
The Supreme Court of Indiana, in adjudicating upon a
statute in some respects identical with our own, has
held that the penalty is for a breach of duty, and not
damages for the breach of contract.  W. U. Telegraph
Co. v. Pendleton, 95 Ind. 12.  In Schaffer v. McNamee,
13 Sgt. & Rawle, 44, 'the words " causes of action arising
upon contract either express or implied," used in con-
ferring jurisdiction upon justices of the peace, were
held to be limited to the case of an agreement or under-
standing immediately between the parties, and Gibson,
J., said : " It is evident that it is not the form of the
action, but the nature of the subject-matter of it, which
must decide the question of jurisdiction.  Actions of
debt often arise *ex maleficio* and where there is not the
semblance of a contract, as in all cases of penalties im-
posed by statute, for there the debt is created by the law
and not by the agreement of the parties."  Accordingly
it was held in Zeigler v. Gram, *Id.* 102, that a justice of

v 84-27

the peace has no jurisdiction of debt for a penalty imposed by a statute for not entering satisfaction of a judgment. While the term contract, used in its very widest sense, would, as may be seen from Blackstone and Bishop, take in penalties incurred by violating a statute, the ordinary use of the word in the common law is less comprehensive. The use of it in our code is attended with a precise definition: "A contract is an agreement between two or more parties for the doing or not doing of some specified thing." §2714. A contract of record is then defined; then specialty is defined; and section 2718 adds: "All other contracts than those specified above are termed simple contracts." It seems obvious that a penalty imposed by statute is not embraced either in the language or the meaning of the code. What the code says of actions, §§3250 *et seq.*, would seem to exclude a certain class of penalties from civil actions altogether, and put them in a class denominated penal actions. "A civil action is one founded on private rights, arising either from contract or tort." "A penal action is one allowed in pursuance of public justice under particular laws. If no special officer is authorized to be the plaintiff therein, the State, or the governor, or the attorney or solicitor-general may be the plaintiff." §§3253-4. The technical expression "arising *ex contractu,*" used by the constitution, is found in section 3261 of the code, which says: "All claims arising *ex contractu* between the same parties may be joined in the same action, and all claims arising *ex delicto* may in like manner be joined." The words "actions *ex contractu*" are found in section 2912, and perhaps in other sections. We think a penalty such as that under consideration arises *ex delicto*, and consequently that a justice's court has no jurisdiction, and can have none conferred upon it by statute, of any suit to recover such a penalty. We are forced to this conclusion, and do not

reach it of our own choice; for we agree with the legislature in thinking it desirable for justices' courts to have jurisdiction of this class of actions. A prompt and cheap remedy in such cases would subserve the public convenience and be conducive to the attainment of justice in matters of daily concern embracing almost a countless number of transactions widely diffused throughout the State.

2. It follows that there was no error in striking the plea; for a previous suit in a court having no jurisdiction could not result in anything but a void judgment, and such a judgment is open to attack any and everywhere. Code, §§3594, 3828. The suit itself was a legal nullity.

3. It seems that the plaintiff, before she brought her action for the penalty, made out and presented to the company an account for her expenses incurred by a needless trip from Brunswick to Macon, this trip being made in consequence of her failure to receive the message which Mr. Bayne, her attorney, had ordered to be sent by telegraph. It does not appear whether this account for expenses was paid by the company or not, but no settlement by way of accord and satisfaction is pleaded or proved, nor would the mere payment of such expenses bar an action for the penalty. The statute leaves the right to damages where it was before the penalty was imposed. It has been correctly held that paying back the amount received for sending a dispatch, unless it is agreed that such payment shall be in full of all the party has a right to recover, will not hinder an action for the penalty. W. U. Telegraph Co. v. Buchanan, 35 Ind. 430.

4. The action treated the penalty as resulting from a failure to deliver the telegram, and not from a failure to transmit it; nevertheless, delay in transmitting might be considered by the jury as involved in a failure to de-

liver. But even if the charge of the court upon this subject was inaccurate, it did no harm, the failure to deliver promptly being fully established by the evidence. The same may be said as to any and all verbal inaccuracies which the charge may have contained.

5. We see no reason to question the sufficiency of the evidence to warrant the verdict. Western Union Telegraph Co. *v.* McKibben, 114 Ind. 511.

*Judgment affirmed.*