MATHIS *v.* THE WESTERN UNION TELEGRAPH COMPANY.

The statute imposing upon telegraph companies a penalty for default in the transmission or delivery of messages is based upon public policy, and has for its object the quickening of the diligence of these companies in the performance of their duties to the public. With this object in view, it seeks to encourage both the sender and sendee of messages to sue for the penalty by offering to the one who shall first sue the whole amount of the recovery. For a company to protect itself against payment of the penalty by a contract with the sender, made at the time of receiving from him the message to be sent, that it will not be liable unless a claim for the penalty is presented to it or its agents in writing within sixty days after the message is filed for transmission, would be contrary to the policy of the legislature in enacting the statute, and all such contracts are void and of no effect. SIMMONS, J., dissenting.

August 31, 1894.

Action for penalty. Before Judge FISH. Sumter superior court. November term, 1893.

The defendant pleaded specially, that no claim in writing was presented within sixty days after the filing of the message for transmission, as required by the stipulation on the back of the blank upon which the message was written. The case was submitted to the judge upon an agreement of counsel, that the plaintiff was entitled to recover if this stipulation was not binding upon him; and if binding, that the defendant was entitled to recover, no claim having been presented within the time so required. The judge found in favor of the defendant.

W. T. LANE, HARDEMAN, DAVIS & TURNER and JAMES DODSON & SON, for plaintiff.

GUSTIN, GUERRY & HALL, for defendant.

LUMPKIN, Justice.

Mathis brought an action against the telegraph company for the statutory penalty. The blank upon which his message was written had printed upon it the following stipulation: "The company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission." The only question presented for our determination is, whether or not the company is relieved from the penalty in a case where the claim for it was not presented within the time prescribed by this stipulation. The court below adjudicated in favor of the telegraph company upon this question, and the majority of the court are of the opinion that this judgment was erroneous.

In *Hill* v. *Western Union Telegraph Company*, 85 *Ga.* 425, it was held that a stipulation on a blank upon which a telegraphic message was written, to the effect that the company would not be liable for damages in any case where the claim was not presented within sixty days after sending the message, was a reasonable regulation, and therefore obligatory upon the sender. But in *Western Union Telegraph Company* v. *James*, 90 *Ga.* 254, it was held that the contractual limitation of sixty days for presenting a claim for damages against a telegraph company did not apply to the statutory penalty. To the same effect, see *Western Union Telegraph Company* v. *Cooledge*, 86 *Ga.* 104. Thus it has been settled that a claim for damages and a claim for the penalty are separate and distinct things. In none of the cases above mentioned, however, was the question presented in the case at bar made or passed upon. The identical question arose and was decided in Western Union Telegraph Company v. Jones, 95 Ind. 228, 48 Am. Rep. 713, in which it was held by the Supreme Court of Indiana that a telegraph company may lawfully contract that a

claim for a statutory penalty shall be made within a reasonable time, and that in the absence of special circumstances, sixty days is not unreasonable. The Missouri Court of Appeals, in Montgomery *v.* Western Union Telegraph Company, 50 Mo. App. 591, decided that the terms "any claim," in a telegraph message blank, included a statutory penalty; and in the same case it was held that a stipulation in such a blank that the company would not be liable for damages unless the claim therefor was made in writing and presented to the company within sixty days after receipt of the message, would protect the company from liability for the statutory penalty where no claim had been presented by the plaintiff and his action was instituted more than sixty days after delivery of the message to the company.

We cannot follow these courts in the conclusions above announced. Our statute imposing a penalty upon telegraphic companies for default in the transmission or delivery of messages is based upon public policy, the object of which is to quicken the diligence of these companies in the performance of their duties to the public. This policy cannot be annulled or defeated by mere regulations adopted by a telegraph company, or by stipulations printed upon its blanks in pursuance of such regulations. The company has no right to require a customer to use a blank with a stipulation upon it as to penalty such as that which was printed on the blank upon which the message of the plaintiff was written. The mere fact that a customer voluntarily uses such a blank without objection is of no consequence. As he could not be compelled to use it, his so doing is really without consideration, so far as he is concerned, and is not binding upon him. Besides, this is not a matter for contractual negotiations between the parties. In *Western Union Telegraph Company* v. *Taylor*, 84 *Ga.* 408, it was said that "the penalty is for the wrongful violation

of a public duty, and neither in whole nor in part for a mere breach of contract," and this conclusion is borne out by the reasoning of Chief Justice BLECKLEY on pages 413, 414, and the authorities there cited. We have not the slightest idea that, in enacting the statute now under consideration, the General Assembly ever supposed or intended that a telegraph company would be able to protect itself against the payment of a penalty in the manner here attempted. On the contrary, we feel certain that to allow this to be done would be violative of the legislative policy, and in a large measure would defeat the purpose for which the statute was passed.

It was argued that our statute was adopted from that of Indiana after the decision in 95 Ind., *supra*, and consequently that the construction of that statute by the Supreme Court of that State should be followed by this court. Our statute is not identical with that of Indiana; and besides, we find, upon examination, that similar statutes, varying more or less in terms, have been passed in a number of the States of this Union, from several of which it might, with equal propriety, be said our statute was taken. But granting, for the sake of the argument, that ours is an adoption of the Indiana statute, the answer to the above contention is, that the Indiana case in no sense involved a construction of the meaning of any words or phrases used in their statute. The court was simply passing upon a contract, or an alleged contract, of which the statute said nothing, and which was urged as a defence to a case arising under the statute. The court was not undertaking to interpret the statute itself. We understand the rule invoked to be applicable where one State adopts legislation existing in another, the courts of which have construed and interpreted the meaning of language used in the statute. An illustration which occurs to us at the moment may be found in the case of *Ocean Steamship Co.* v. *Way,* 90 *Ga.* 747.

There it appeared that the term "trinkets," as used in the "English Carrier's Act," from which our act of Congress was borrowed, had been given by the English courts a certain meaning; and it was held that, in adopting the English statute, Congress advisedly used the word "trinkets" as having the meaning which the English courts had attached to it.

On the whole, we do not feel under any restraint from any source to do otherwise than follow our own conclusion upon the question at bar, which we have deliberately reached after a most anxious and careful consideration.                              *Judgment reversed.*

Simmons, Justice, dissenting.

That a corporation transacting business with the public has a right to make all reasonable rules and regulations for the government of its business, is too well settled to require the citation of authorities; it is universally held by all courts. On this principle, courts hold that an insurance company has a right to stipulate with the assured that, in case of loss, he must make out his proof of loss and submit it to the company within a specified time, or his right of action to recover for his loss is barred. On the same principle, courts hold that a telegraph company has the right to contract with the sender of a message that he must give written notice of his claim for damages arising from a breach of contract within a specified time, or his right to recover will be barred. This is held, too, in the face of the statute which gives the sender a much longer time to bring his action for his damages. It is held on the principle that the company has a right to make reasonable rules and regulations in the transaction of its business with the public; and such rules and regulations are held to be reasonable on the ground that the telegraph company receives and transmits thousands of telegrams in the course of the time prescribed in the

rule, and that it would be impossible after this time for it to preserve its evidence so as to meet and defend actions brought against it for damages within the time allowed the sender by the statute of limitations to sue for the breach of a contract. The courts, in holding this rule to be a reasonable one, have virtually allowed it to abolish the statute of limitations by contract with the sender. The contracts thus made do not relieve the telegraph company from any part of its obligation. It is bound to the same care, diligence and fidelity as the law requires it to exercise if no such contract had been made. All the contract requires is that the sender of a telegram should give notice of his claim for damages within the time agreed upon in the contract, so as to enable the company to ascertain the facts and to preserve the same for its defence. This being true, it is difficult for me to see why the company cannot make the same contract in relation to a penalty imposed by law for a violation of its statutory duty, when the penalty is to be recovered by an individual and not by the public. I admit that it cannot make a contract that will relieve it from the penalty, or that will relieve it from its breach of duty, either by omission or commission. But the contract under consideration does not undertake to do that. It simply means that if the company fails to discharge its duty to the sender as required of it by law, the sender agrees to present to it in writing his claim for the statutory penalty within sixty days after the message is filed with the company. It does not relieve the company of the penalty. The same obligation rests upon it to send or deliver the message "with impartiality and good faith and due diligence." If it fails to do so and the sender complies with the stipulation to make his claim for the penalty within sixty days, the company is as much bound for the penalty as if the stipulation had not been made. It is no hardship upon

him., In these days of intelligence and rapid communication, he can certainly ascertain within a much shorter time than this the failure on the part of the company to comply with the law. If he sends a message, he can within a few hours, or days at least, ascertain whether it was transmitted and delivered as the statute requires. Why should he have more time to bring his action for a penalty of $100 than he would to bring it for damages involving $1,000 ? It is said that the reason is, that in the one case it is for a penalty, and in the other for damages; that the penalty implies public policy and that the law forbids any one to contract contrary to that; that the object of the legislature was to quicken the diligence of these companies in the performance of their duties, and that this act is based upon public policy. I think that I have already shown that the company is not relieved from any of its duties by this stipulation in the contract; that the sender waives no right that the statute gives him by agreeing to the stipulation. All that he does waive is the general statute of limitations, in case he fails to give the notice. He agrees with the company to make a limitation of their own in lieu of the general statute prescribed for the breach of all contracts, if he fails to give the notice according to his agreement. Upon this subject, I think the case of the W. U. T. Co. v. Jones, 95 Ind. 228, and the case of Montgomery v. same company, 50 Mo. App. 591, cited by Mr. Justice LUMPKIN in the opinion of the court in this case, are directly in point. I call particular attention to the reasoning of Chief Justice Elliott in Jones' case. While it is not binding upon us, the reasoning is very forcible and is entitled to great weight.

Now as to the public policy of the act of 1887 which gives this right of action. It will be observed that the act declares that the penalty may be recovered by "either the sender of the dispatch or the person to whom sent

or directed, whichever may first sue." It does not give
the right of action to the public. It does not provide.
that any part of the recovery shall go the public, or to
any portion of it. It gives the whole to the sender if
he first brings his action. The suit under consideration
was brought by the sender. I am free to admit that if
the recovery, or a portion of it, went to the public,.
the sender could not agree to any stipulation which.
would deprive the public of its portion. The rule seems.
to be that where the public, or a portion thereof, are in-
terested in a fine or penalty, the person or informer who
brings the action cannot settle or compound with the de-
fendant so as to deprive the public of its interest therein..
18 Am. & Eng. Ency. Law, 281, and authorities cited.
But where the penalty or fine goes alone to the informer·
or person who institutes the action therefor, he may
settle·or compound with the defendant, or withdraw his
suit, or waive his right to recover the same. He being
alone interested in the matter, may make any kind of
agreement about it that he pleases. He is not compelled
to sue; and if he does so, he can withdraw the suit or set-
tle it by compromise. If he is entitled to receive half of
the penalty, he can compromise with the defendant for
his half, or he may release the defendant from his part.
thereof. Warden *v.* Pope, 2 Ired. 44; Haskins *v.* New-
comb, 2 Johns. 44; *Telegraph Co.* v. *Taylor*, 84 *Ga.* 408;.
Telegraph Co. *v.* Buchanan, 35 Ind. 430. If he can do·
this, what prevents him from stipulating in advance
that if the defendant becomes liable to the penalty, he·
will give him notice thereof within sixty days? Sec-
tion 10 of our code provides that: "Laws made for the
preservation of public order or good morals cannot be
done away with or abrogated by any agreement; but a.
person may waive or renounce what the law has estab-
lished in his favor, when he does not thereby injure others.
or affect the public interest." The act of 1887 was not

enacted for the preservation of public order or good morals, but, as announced in the opinion of the majority of the court, was made for the purpose of quickening the diligence of these companies in the performance of their duties. The act of 1887, as before remarked, declares that the whole recovery shall go the sender if he is the first to sue. His stipulating that he will give notice of the liability of the company for the penalty within sixty days affects only his own right to recover, and does not injure or affect the public interest in any manner. Under this section of the code, this court held in the case of *Simmons* v. *Anderson,* 56 *Ga.* 53, that Simmons, as head of a family, could waive his right to a homestead, although the constitution of the State expressly declared that he was entitled to one and that it should not be subject to levy and sale. Section 2040 of the code provides that certain property of every debtor who is the head of a family shall be exempt from levy and sale, nor shall any valid lien be created thereon. Yet this court, in *Flanders* v. *Wells,* 61 *Ga.* 195, held that Wells could waive this exemption on property described in the section, and that it was subject to sale under a mortgage lien thereon which contained the waiver. These decisions were pronounced before the adoption of our present constitution, which allows a waiver of homestead and exemption. This constitutional provision allowing the homestead, and section 2040 providing for what is called the "pony homestead," were enacted to prevent families from being thrown out of house and home, and thus keep them from becoming charges upon the public. The public had therefore an indirect interest in seeing that each head of a family had a home. Yet with this interest of the public, a waiver by the head of a family was held valid and binding. If it was not contrary to public policy to waive a homestead, which was enacted for the protection of the women and chil-

dren of the State and to prevent them from becoming charges on the public, how much less is it contrary to that policy to allow a sender of a telegram to stipulate that he will not hold the company liable for a penalty unless he gives it notice within sixty days from the filing of the message.

To repeat: he does not waive his right of action; he only waives the general limitation act, in case he fails to give notice of his claim for the penalty. If he gives the notice, he can still bring his action within the time prescribed by the statute of limitations. His doing so affects no one but himself. If he fails to give the notice which he stipulates to do, it is his own fault, and his failure injures no one but himself. In my opinion, the plaintiff in this case had the right to make the agreement in question. It was not contrary to public policy, and he should not be allowed to recover.